Wilfred J. MECKEL, II, Fred E. Brown, B.W. Robertson, William S. Hazen, John D. Lynch, David Watts, Theodorus V.W. Cushny, Ronald T. Schroeder, James H. Willis, as partners of J & W Seligman & Co., (on behalf of themselves and all former holders of the Florida Gas Company 5¾% Convertible Subordinated Debentures due April 1, 1989 who are similarly situated), Plaintiffs-Appellants,

v.

CONTINENTAL RESOURCES COMPANY (successor to Florida Gas Company) and Florida Exploration Company (formerly known as Continental Exploration Company, Inc.), Defendants-Appellees.

CONTINENTAL RESOURCES COMPANY and Florida Exploration Company, Third-Party Plaintiffs,

v.

CITIBANK, N.A., Third-Party Defendant-Appellee.

No. 176, Docket 84–7446.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1984.

Decided March 21, 1985.

Peter G. Eikenberry, New York City (Paul R. Levenson, Barthold & Eikenberry, New York City, of counsel), for plaintiffs-appellants.

Stephen Greiner, New York City (Jonathan P. Wolfert, Willkie Farr & Gallagher, New York City, of counsel), for defendants-appellees Continental Resources Co. and Fl. Exploration Co.

Nadine Strossen, New York City (Frederic M. Umane, Harvis & Zeichner, New York City, of counsel), for third-party defendant-appellee Citibank, N.A.

Before MANSFIELD, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge.

The issue on this appeal is whether there was a genuine issue of disputed fact as to whether notice of redemption was mailed to debenture holders advising them of their option to convert their debentures into common stock by a certain date. Appellants, agents for several debenture holders, insti-tuted an action alleging that the holders failed to take advantage of the favorable conversion option because the redemption notice was inadequate. The substance of their argument below was, in effect, that "a word to the wise is sufficient," and since some holders did not act timely in their own best interests, the "word" obviously must not have been sent. The district court found that the notice given fully satisfied the legal obligations of those whose duty it was to give notice and granted summary judgment dismissing the complaint. We affirm.

I

Plaintiffs-appellants are the nine general partners of J & W Seligman & Co. (Seligman or Seligman partners), a New York brokerage firm, who brought suit in the United States District Court for the Southern District of New York (Stewart, J.) against Florida Gas Company (Florida Gas) and its successor Continental Resources Company and Florida Exploration Company (jointly referred to as Continental) and against Citibank, N.A., defendants-appellees. The undisputed facts reveal that on April 1, 1969 Florida Gas issued $15,000,000 of 5¾% convertible, subordinated debentures, redeemable at any time, due 20 years later in 1989. The conversion price was $23.41 per share of common stock. Citibank agreed to act as trustee for the debenture holders and entered into an indenture agreement with Florida Gas dated April 1, 1969. Both the indenture agreement and the debentures themselves provided for notice to be given by a mailing. The debenture called for "notice by mail." Section 1105 of the indenture stated:

Notice of redemption shall be given by first-class mail, postage prepaid, mailed not less than 30 nor more than 60 days prior to the Redemption Date, to each Holder of Debentures to be redeemed at his last address appearing in the Debentures Register.

In June 1979 Continental Resources Company and Florida Gas agreed to merge. Incident to the merger, Florida Gas voted

to redeem all outstanding 1969 debentures. It thereupon instructed Citibank to prepare and mail a redemption notice to debenture holders. The notice gave debenture holders until August 20, 1979, to convert their debentures into common stock.

 Citibank claims that on July 16, 1979 it sent the redemption notice by first-class mail to the approximately 190 debenture holders. The market price of Florida Gas common stock on the New York Stock Exchange at the end of July 1979 was $48 per share, more than double the $23.41 per share conversion price available for debenture holders. As of August 20, 1979 slightly over one-half million dollars in debentures remained unconverted and 54 holders of these instruments had not exercised their conversion option. The Seligman partners sought to recover for the failure of three of their customers, for whom they were acting as agents, to convert their $42,000 worth of debentures into common stock. Seligman's damages arose from its voluntarily crediting these three customers' accounts for any losses they may have sustained, and not from any direct loss Seligman incurred as a debenture holder.[1]

The gravamen of the complaint is that defendants failed to provide adequate notice of redemption. The Seligman partners allege breach of fiduciary duty, unjust enrichment, breach of the indenture agreement and various violations of securities laws, including violation of Rule 10b–5. The partners also claim that the indenture, which provided that notice of a redemption need only be sent by first-class mail, is an unenforceable contract of adhesion. The complaint further asserts that Florida Gas breached certain rules of the New York Stock Exchange (NYSE or Exchange) by failing to issue a press release and provide general publicity concerning the redemption. Finally, the partners sought class certification on behalf of all those debenture holders who did not timely convert.

## II

The record before us demonstrates that on July 16, 1979 Florida Gas directed Citibank to call the entire outstanding series of debentures, and that August 20, 1979 was set as the Redemption Date. In response to this request, a Citibank employee sent a notice of redemption to each holder by first-class mail, postage prepaid. Seligman was included in the mailing. Proof of mailing of the notice is established by the affidavit of a Citibank employee who "caused" the notice to be mailed, and by the affidavit and deposition of a Citibank manager who testified about the regular procedures Citibank used to mail notices to debenture holders.

The manager's affidavit and deposition testimony described the procedures Citibank used to assure proper mailing. After obtaining a mailing list from a computer registry, Citibank used four methods to verify that the number of labels, envelopes, stuffed envelopes and stamped envelopes conformed to the count of holders as of the record date. First, under the regular office procedure a computer generates a complete set of mailing labels based upon Citibank's registry of debenture owners and nominees. These labels are reviewed and matched against a separate printout. Second, after the employees of the mail room label the envelopes by machine, the ma-

---

1. Seligman, as the registered holder of the debentures holding them in its own name on behalf of its customers, had standing to sue as the signatory agent of the holders. Fed.R.Civ.P. 17(a); *Bache & Co. v. International Controls Corp.,* 324 F.Supp. 998, 1004–05 (S.D.N.Y.1971), *aff'd* 469 F.2d 696 (2d Cir.1972). *See also Hercules, Inc. v. Dynamic Export Corp.,* 71 F.R.D. 101, 104–05 (S.D.N.Y.1976) (New York law parallels federal law in allowing a signatory agent to sue on a contract). Moreover, although a mere volunteer is not entitled to subrogation, *Perlmutter v. Timely Toys, Inc.,* 8 A.D.2d 834, 834, 190 N.Y.S.2d 107 (Second Dep't 1959), as the district court correctly noted, Seligman had "an interest in avoiding litigation [that] is a protected interest which can give rise to a right of subrogation." *New York Stock Exchange v. Sloan,* [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,618, at 98,338 (S.D.N.Y. Aug. 15, 1980). *See First National City Bank v. United States,* 548 F.2d 928, 936, 212 Ct.Cl. 357 (1977) (One who pays another's debt to protect his own rights is ordinarily not a volunteer and may be subrogated to the creditor's rights).

chine counts the number of envelopes labelled and that number is checked against the number of labels delivered to the mail room. Third, a different machine encloses a notice of redemption in each envelope, which is sealed and metered. The number of envelopes sealed and metered is then compared with the number generated by the labelling machine, the computer printout, and the number of labels generated. The final check is when the postage meter is read to verify the number of envelopes to be mailed. The notices are then delivered to the Post Office. Seligman does not contend that its name and address were not accurately reflected in the computer registry. Nor is there evidence that any of the notices were returned to Citibank from the Post Office. Out of approximately 190 debenture holders, 54, or almost 30%, failed to convert prior to the redemption date.

Appellants' counsel conducted an informal survey of the 53 other debenture holders (in addition to Seligman) who failed to convert. A copy of a class action complaint accompanied each questionnaire. The purpose of the survey was to determine how many, if any, holders failed to convert because they had not received the notice. Accepting the district court's characterization of the results of the survey, we find that Seligman presented "an unsigned list of fourteen individual debenture holders, half of whom are described as stating that they never received notice and half of whom are described as stating that they have no recollection of receiving notice." *Meckel v. Continental Resources Co.*, 586 F.Supp. 407, 409 (S.D.N.Y.1984).

On April 16, 1984 Judge Stewart issued a decision granting summary judgment to Continental and Citibank. *Id.* at 411. He held that the indenture only required that the notice be sent by first-class mail, that there was no genuine dispute of the fact that Citibank had made a proper mailing, that there was no basis for imposing a duty higher than that imposed by the indenture, and that neither Florida Gas nor Citibank was required to give actual notice. Accordingly, the district judge dismissed all of plaintiffs' claims that were based on inade-

quate notice. Judge Stewart also dismissed the claims relating to alleged violations of the Rules of the NYSE. He found that the Rules did not apply to these debentures because they were neither listed for trading on the Exchange, nor the subject of a listing application, and held it unnecessary to consider whether a private right of action exists under the Exchange rules. The denial of class certification, which had occurred a year earlier on April 25, 1983, was based upon the district court's findings that the purported class did not fall within either of the subdivisions of Fed.R.Civ.P. 23(b)(1) or (b)(3) and that Seligman's claims lacked the typicality required by Fed.R. Civ.P. 23(a)(3). Seligman's appeal challenges the denial of class certification and the grant of summary judgment in favor of appellees Continental and Citibank and the resulting dismissal of Seligman's complaint.

### III

■ Six of the eight claims contained in Seligman's complaint are based on its argument that defendants failed to give adequate notice of the redemption. First, appellants argue that the notice was inadequate as a matter of law under the Trust Indenture Act. Seligman urges that Citibank's failure to go beyond the terms of the Indenture—for example, by sending a follow-up mailing or using registered mail—violated its obligation of reasonable care and skill under the Trust Indenture Act. 15 U.S.C. § 77aaa–77bbb (1982). The indenture provided that notice be given by first-class, postage prepaid mail. That is all the law required Citibank to do.

■ Trust indentures are important mechanisms for servicing corporate debt and banks play an essential role in the process that brings corporate financings to the public market. It is important that a bank's obligations with respect to notice be limited to those agreed upon, subject only to the requirement that the provision for notice be reasonable. That Congress recognized these significant economic consid-

erations is reflected in 15 U.S.C. § 77*ooo* (a)(1) of the Trust Indenture Act. This governing statute specifically states that an "indenture ... may provide that ... the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture." Paragraph 6.01(a) of the indenture states that "(1) the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenant or obligation shall be read into this Indenture against the Trustee...." An indenture trustee is not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement. *See Hazzard v. Chase National Bank*, 159 Misc. 57, 287 N.Y.S. 541 (Sup.Ct.N.Y.Cty.1936), *aff'd*, 257 A.D. 950, 14 N.Y.S.2d 14 (1st Dep't 1939), *aff'd*, 282 N.Y. 652, 26 N.E.2d 801 (1940), *cert. denied*, 311 U.S. 708, 61 S.Ct. 319, 85 L.Ed. 460 (1940).

■ Second, Seligman claims that the indenture provision is an adhesion contract because it only provides for notice by first-class mail, which, Seligman argues, is contrary to what a debenture holder might reasonably expect. In our view the provision in the debentures that notice would be given "by mail" was not inherently unfair or unreasonable and it satisfied the debenture holders' reasonable expectations as to the notice that they would receive. The debentures provide that they "are subject to redemption upon not less than 30 days notice by mail ... at any time ... at the election of [Florida Gas]." Appellants argue that this provision is ambiguous and that, properly construed, the debentures require more than a single first-class mailing of notice. They urge as authority *Van Gemert v. Boeing Co.*, 520 F.2d 1373 (2d Cir.), *cert. denied*, 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975), which held that the defendants were required to give notice which conformed to "the debenture hold-

ers' reasonable expectations as to notice," *id.* at 1383. Such "reasonable expectations," appellants contend, required defendants to mail notice by certified or registered mail, to make follow-up efforts to reach debenture holders who did not convert, or to supplement mailed notice with published notice. This argument is unpersuasive.

To begin, the debentures here were not ambiguous. They stated explicitly that notice would be given "by mail." The contrast with the debentures at issue in *Van Gemert* is striking. Those debentures contained no indication as to the type of notice of redemption that was to be provided. It was the total lack of a notice provision in the debentures that we held necessary as a condition precedent to an imposition of a duty to provide "reasonable" notice. Nor was the notice given here unreasonable. In *Van Gemert* the notice actually given and found by us not conform to the debenture holders' reasonable expectations was not notice sent by first-class mail, but rather notice given by publication in the Wall Street Journal. In fact, we strongly implied that notice by mail would have been adequate. *Id.* at 1384 (suggesting that including notice in mailing of proxy materials would have been reasonable). Moreover, appellants' argument that notice by mail is unconscionable because of the inequality of bargaining power and the probability that notice will not be received is contradicted by the very source upon which it relies. Note, *Convertible Securities: Holder Who Fails to Convert Before Expiration of the Conversion Period*, 54 Cornell L.Rev. 271, 279, 281 (1969) (recommending notice by mail). Therefore, even if the debentures had not been explicit as the form of notice to be given, we would remain unconvinced that notice given by first-class mail was unreasonable.

■ Third, Seligman attacks the legal sufficiency of Citibank's affidavits describing its regular office procedures, which served as its sole proof of compliance with the mailing requirements. Appellants con-

tend that since Citibank did not submit an affidavit by a person with actual knowledge of the mailing or the routine office procedure, defendants' proof was insufficient and did not entitle them to the presumption of mailing and receipt. Appellants further argue that the employee's affidavit regarding her "causing" the mailing and the manager's affidavit describing standard office procedures were deficient as proof because neither affiant had personal knowledge, as Fed.R.Civ.P. 56(e) requires. They point out that the manager admitted in his deposition that he was not familiar with the transaction at issue because he "wasn't doing that work at the time." Similarly, the employee admitted that she had no recollection of anything pertaining to Florida Gas. Moreover, appellants continue, this employee did not work in the mailroom, go to the post office, state the procedures that were followed, and did not personally do the mailing. While this argument has superficial appeal, it is contrary to New York law. In *Bossuk v. Steinberg*, 58 N.Y.2d 916, 460 N.Y.S.2d 509, 447 N.E.2d 56 (1983), the Court of Appeals rejected the argument that there was insufficient proof of mailing "because the . . . employee who actually did so was not produced[,]" finding that "[t]he proof of the . . . regular course of business in this regard sufficed." *Id.* at 919, 460 N.Y. S.2d 509, 447 N.E.2d 56. Thus, under New York law personal knowledge is required only to establish regular office procedure, not the particular mailing. Here, the presence of such proof establishes prima facie evidence of the mailing and creates a rebuttable presumption as to receipt.

■■■ Fourth, appellants deny that they received the notice and allege that other debenture holders' non-receipt could be inferred from either their failure to convert or from their responses to the survey. New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of re-

ceipt does not rebut that presumption. There must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable. *See Nassau Insurance Co. v. Murray*, 46 N.Y.2d 828, 829–30, 414 N.Y.S.2d 117, 386 N.E.2d 1085 (1978). Whether the sender's duty is to sound the drum-beat, send up the smoke signal, or mail the notice, proof that he performed suffices, regardless of what the receiver heard, saw, or read. Under *Nassau*, the controlling inquiry is only whether Citibank fulfilled its duty to send the notice, not whether the holders received it.

■■■ But there remains the question whether proof that notice was not received is evidence that it was not mailed. One recent New York case rejected this obverse of the presumption of receipt upon proof of mailing, and held that mere denial of receipt does not raise a question of fact as to mailing. *See Engel v. Lichterman*, 95 A.D.2d 536, 544, 467 N.Y.S.2d 642 (2d Dep't 1983) (rejecting position advanced by Gibbons, J., concurring and dissenting, that "if a letter were not received, then it should be presumed not to have been properly mailed," *id.* at 551, 467 N.Y.S.2d 642). Thus, Seligman's mere denial of receipt is not enough. Although appellants do not contest the adequacy of Citibank's regular office procedures, we do not read the memorandum decision in *Nassau* or the majority's opinion in *Engel* to hold that direct proof of divergence from routine procedure is the sole or exclusive means to rebut proof that notice was mailed. We think that in the context of a mass mailing there may be circumstantial evidence rebutting proof of mailing, without direct proof that the routine office procedure was either not followed or carelessly carried out.

■■■ The district court found that the only grounds to find disputed issues of fact were the inferences that might be drawn from the relatively small percentage of holders who converted and from the fact

that seven of those who did not convert stated that they had never received notice and seven stated that they did not recall receiving notice. We agree with Judge Stewart that this evidence of lack of receipt is insufficient to create an issue of fact regarding mailing. The burden to produce such proof, after defendants demonstrated that they mailed the notice, fell to Seligman. *See* Fed.R.Civ.P. 56(e). In the circumstances of the present case, few inferences can be drawn from the percentage who did not convert. Many reasons—running the gamut from neglect to a belief that conversion will not be economically advantageous at that time—may exist for a failure to convert. In fact, a number of the non-converting debenture holders contacted in appellants' survey affirmatively stated that they had not converted even though they had received the notice mailed by Citibank. Moreover, the evidence of some holders who merely could not recall receipt is not the kind of proof that will defeat a presumption of mailing. Thus, it would take more substantial proof than that present in this record to create a geniune issue of fact warranting jury resolution of whether notice was properly sent.

### IV

 It is unnecessary for us to consider whether a private right of action exists under Section A2 of the Rules of the NYSE because the district court properly held that as the Florida Gas debentures were not listed for trading on the Exchange, Section A2 did not apply. *See* New York Stock Exchange Company Manual, § A2 (Aug. 1, 1977) (NYSE Rules applicable only to securities listed on the NYSE and subject to a listing agreement). Nor is there merit to appellants' argument that the debenture holders, as third party beneficiaries of the NYSE Company Manual and the Florida Gas Listing Agreement, had a right to published notice of the redemption. No suggestion that the contracting parties intended to benefit Seligman can be gleaned from the NYSE Company Manual or the Florida Gas Listing Agreement. *See Port Chester Electrical*

*Constr. Corp. v. Atlas,* 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976).

Finally, in view of our conclusion that appellants' claims are without merit, we find it unnecessary to address Citibank's claims that Seligman's own office procedure for handling mail was the proximate cause of its damages and that in any event Seligman would not have relied on the notice. Nor do we need to consider or determine whether the district court abused its discretion in denying class certification.

Accordingly, the grant of summary judgment below is affirmed.