(September 18, 1986)

■ In the Matter of the Estate of ANTON MEISTER, Deceased. ANNA MIEJSKA et al., Appellants; CHEMICAL BANK et al., Respondents; VAUGHAN AND LYONS, Respondents-Appellants. —Decree of the Surrogate, New York County (Honorable Renee R. Roth), entered on or about December 1, 1983, based on the decision and findings of the Acting Surrogate (Honorable Alan Murray Myers), which, *inter alia*, overruled and dismissed certain objections of respondents-appellants Palmer College of Chiropractic and the Polish Legatees to the judicial settlement of petitioner-respondent Chemical Bank's first intermediate and supplemental account, unanimously modified, on the law, to reinstate the objections of the aforementioned respondents-appellants insofar as they pertain to petitioner-respondent Chemical Bank's alleged failure in its capacity as executor of the last will and testament of the decedent Anton Meister to invest adequately the estate's cash assets, and the matter is remanded for further proceedings as to the reinstated objections in accordance with this memorandum, and except as modified, affirmed, without costs.

Dr. Anton Meister died in 1965, leaving an estate with an estimated value of between $5 and $8 million. In 1976, the executors of the estate commenced this proceeding to judicially settle their first intermediate account and supplemental account. Objections to the account were filed by respondent legatees. All of these objections but one have been adequately disposed of by the Acting Surrogate in his decision, here under review.

The objection, which merits closer attention than it has thus far received, is that pertaining to the retention by one of the executors, Chemical Bank, of uninvested sums in non-interest-bearing accounts. Appellants maintain that large sums far in excess of amounts needed to meet the estate's

expenses were kept dormant for unreasonably long periods in non-interest-bearing accounts at the executor's bank. Appellants claim further regarding the uninvested sums on deposit that they have not been paid the statutory interest to which they are entitled pursuant to Banking Law § 100-b (4). In addition, appellants urge that Chemical's maintenance of the unnecessarily large balances in the accounts in question benefited Chemical at the expense of the estate and the legatees, and so constituted a breach of the bank's fiduciary duty as executor.

Clearly, the merit of appellants' claims depends initially upon a factual determination, namely, whether unnecessarily large sums were kept by Chemical in non-interest-bearing accounts for unreasonably long periods. No hearing was held on this question. The matter was instead decided by the Acting Surrogate on the basis of expert opinion in documentary form.

The detailed affidavits of appellants' expert accountant, Anthony Uzzo, including work sheets for each of the accounts at issue, demonstrate persuasively that after allowing for balances sufficient to meet the estate's administrative needs, the accounts maintained by Chemical still contained average daily balances* of thousands, and sometimes tens of thousands of dollars.

Chemical replies that the complained-of balances are relatively unimportant when viewed in the context of the entire estate, which was complex and generally well managed. In this regard, Chemical points out that only a small percentage of the total estate funds was left uninvested. Chemical also points out that a large portion of the estate was made up of real estate and that it was allegedly the general practice among real estate managers in the late 1960's and the 1970's to keep funds sufficient to meet a full year's expenses on deposit in a checking account. Finally, Chemical maintains that it was not easy during the time period at issue to purchase Treasury bills or find other comparable investments and that the cumbersome nature of the transactions involved in investing and reinvesting money sometimes made it more prudent to simply retain the funds as was done.

The Acting Surrogate, while observing that the annual average daily balance method employed by appellants "undoubtedly gives a very close approximation of the total

---

* The average daily balance was computed on the basis of the closing balances in the accounts over the course of a year.

amount in each account which remained uninvested over a period of time", found the technique flawed. According to the court, the difficulties were that day-to-day fluctuations were not accounted for by the averaging technique based on closing balances and that there was no allowance for any cash reserve. The court was no more satisfied with respondent's resort to percentages of uninvested cash since such percentages, though low, might conceal sizeable uninvested sums. Thus, the court concluded that "there is no simple, objective mathematical standard by which the acts of a fiduciary can be judged. Unless related to the overall administration of the estate, with due consideration for the inherent problems and individual peculiarities of each estate, numbers calculated *in vacuo* are simply additional numbers." Having dispensed with mathematics, the Acting Surrogate observed that the estate was generally well managed and that he would not substitute his business judgment in hindsight for that of the then-prudent business judgment of the fiduciaries. Finally, the court dismissed appellant's conflict of interest claim on the ground that "It would be absurd to require a corporate fiduciary to maintain estate accounts elsewhere, or to forego its usual profits from its commercial banking activities, simply based on deposits made by a separate trust department".

In our view, the approach ultimately adopted by the Acting Surrogate was wholly conclusory and failed to deal in any meaningful way with the essential factual question, i.e., whether there were excessively large uninvested balances maintained for unreasonably long periods. While it is certainly true that there is "no simple, objective mathematical standard by which the acts of a fiduciary can be judged", it is also true that in a case such as the present one, there must be some resort to objective data in judging the propriety of the fiduciary's conduct. As the court itself was aware when it criticized respondent's use of percentages, the existence of large uninvested balances is not disproven by generally competent estate management. Yet, it was finally upon the bare assertion of the bank's general competence that the court concluded there had been no breach of fiduciary duty. No attempt was made to assess the actual extent of the uninvested funds.

At the very least, appellants' documentary submissions, particularly the affidavits of Mr. Uzzo, should have been sufficient to raise a question as to whether inappropriately large balances were maintained. If it was not possible to resolve this issue on the basis of the record as it then stood, a

hearing might have been held or independent expert testimony sought. The matter was not, however, adequately disposed of by holding, in essence, that whether or not there were large uninvested sums, Chemical had generally done a good job. This is particularly true in light of the court's acknowledgement that appellant's annual average daily balance method "undoubtedly gives a very close approximation of the total amount in each account which remained uninvested over a period of time."

The court's reasons for declining to attach any probative importance to the data resulting from the annual average daily balance method are unpersuasive. The daily fluctuation flaw upon which the court placed such emphasis is really of minimal significance because amounts deposited for a short while are averaged out over the course of a year and, therefore, have a relatively small impact on the final computation of the average uninvested balance. Moreover, the Acting Surrogate's observation to the contrary notwithstanding, Uzzo did provide for minimum cash balances sufficient for anticipated expenditures.

Chemical disputes the adequacy of Uzzo's minimum cash balances, especially with regard to the real estate accounts, claiming that the standards of prudent real estate management during the 1960's and 1970's required that cash sufficient to meet one year's projected expenses be kept on deposit. In observing that this and "all other decisions made by the executors and objected to herein * * * are borne out by the evidence as having been made in the exercise of sound and prudent business judgment", the court appears to have ignored the affidavit of Alan Levine, executive vice-president of Walter & Samuels, Inc. and head of the firm's real estate management department, which oversees the operation of over 100 buildings. Levine states categorically: "It is not now, and it was not at any time from 1965 to the present, the sound or general practice of real estate management firms to maintain cash balances for their real estate sufficient to meet annual expenses. The practice is and has been to maintain a small cash balance, and place the remainder of the funds in liquid, conservative investments, from which cash may immediately be obtained to the extent not distributed to the real estate owners." Certainly, the Levine affidavit raises a question as to the propriety of maintaining such large cash reserves in real estate accounts, which question was not adequately addressed by the court's summary characterization of

the bank's conduct in this regard as yet another instance of its exercise of sound and prudent business judgment.

Similarly, it would appear that an issue exists concerning the bank's claim that Treasury bills were often unavailable for investment and reinvestment. The affidavit of John S. Minton, vice-president of Shearson/American Express, flatly contradicts this claim. It must be noted as well that it is hardly credible that a major banking institution such as Chemical was unable to make routine investments in Treasury bills expeditiously during the time frame in question. This issue was not touched on at all by the court. Presumably, though, the executor's actions or inactions would once again have been characterized as consequences of sound business judgment.

Turning to the Acting Surrogate's dismissal of the conflict of interest claim, it does not appear that the court dealt in any meaningful way with the actual claim made. No one, including appellants, suggests that a corporate fiduciary must forego its usual profits from its commercial banking activities. Rather, what appellants allege is that because excessive funds were kept on deposit in non-interest-bearing accounts at the corporate fiduciary's institution rather than invested, the fiduciary benefited from the deposits beyond its ordinary entitlement, at the estate's expense. If in fact there were excessive amounts kept on deposit the bank may have benefited improperly. Yet, as noted above, no findings were made as to the extent of the uninvested balances. Obviously, without the necessary factual underpinning, no determination could have been made, and none was, as to the proper amount of statutory interest, let alone whether there had been a breach of fiduciary duty requiring an accounting and the imposition of a surcharge.

The duty of an executor to keep estate funds not necessary for distribution within a reasonably short time invested is well established. *(See, e.g., Matter of d'Espinay-Durtal,* 4 AD2d 141; *Cooper v Jones,* 78 AD2d 423; *Matter of Simenowitz,* 36 AD2d 760; 2 Scott, Trusts § 181 [3d ed 1967].)* Whether this duty was adequately discharged in this case was not satisfactorily addressed by the Acting Surrogate. His decision, replete with generalities, glosses over crucial questions raised by the detailed record.

Thus, the case should be remanded for further proceedings with the direction that findings be made concerning (1) the extent of the uninvested cash in the accounts maintained by

Chemical; (2) the amount of cash a prudent individual would maintain in such accounts assuming them to be his own *(see, King v Talbot,* 40 NY 76); (3) whether Treasury bills or comparable investments were unavailable as claimed by the bank; (4) whether, in light of the findings as to the first two inquiries, the amount of statutory interest paid by Chemical was proper; and (5) whether, in view of all the findings, there was any breach of fiduciary duty warranting an accounting and the imposition of a surcharge. Concur—Murphy, P. J., Sullivan, Carro, Rosenberger and Ellerin, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE PERRY, Appellant.—Judgment, Supreme Court, New York County (Harold Rothwax, J.), rendered on November 18, 1983, unanimously affirmed.