**In re E.F. HUTTON SOUTHWEST PROPERTIES II, LTD., Through its Limited Partners Committee, Debtor.**

**E.F. HUTTON SOUTHWEST PROPERTIES II, LTD., Through its Limited Partners Committee, Plaintiff–Appellant,**

v.

**UNION PLANTERS NATIONAL BANK, Defendant–Appellee.**

No. 91–1331.

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1992.

Rehearing Denied April 7, 1992.

See also 103 B.R. 808.

Robert E. Goodman, Jr., Fults, Francis & Goodman, Dallas, Tex., for plaintiff-appellant.

Thomas J. Walsh, Jr., Robert M. Field, McDonnell Boyd, Memphis, Tenn., for defendant-appellee.

Before REYNALDO G. GARZA, GARWOOD, Circuit Judges, and SCOTT, District Judge.[1]

REYNALDO G. GARZA, Circuit Judge:

In this case, a debtor sued an indenture trustee which did not invest funds which it collected while the funds were contested and therefore undistributed. For the reasons below, we hold that the district court did not err in granting summary judgment in favor of the indenture trustee on all claims.

## BACKGROUND

On June 28, 1984, Plaintiff–Appellant ("Hutton") entered into a Purchase Agreement with four financial institutions ("the Purchasers"), including State Mutual Life Assurance Company ("State Mutual"). Under the Purchase Agreement, the Purchasers agreed to make loans to Hutton. The loans were to be secured by, among other things, notes executed in favor of Hutton by Hutton's limited partners ("the LP Notes") and by payments on, or other proceeds of, the LP Notes. The loans were also to be secured by surety bonds issued in respect of substantially all of the LP Notes ("the Bonds") and by payments on, or other proceeds of, the Bonds.

In connection with the Purchase Agreement, Hutton and Defendant–Appellee ("Union Planters") entered into a Pledge and Trust Agreement ("the Trust Agreement") also dated June 28, 1984. Under the Trust Agreement, Union Planters agreed to act as collateral trustee of the LP Notes and the Bonds and, in that capacity, to collect payments on the LP Notes and the Bonds and pay them to the Purchasers to satisfy their loans to Hutton. The Trust Agreement provides that New York law governs.

On September 2, 1988, Hutton filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Northern District of Texas. The bankruptcy court appointed the Limited Partners Committee ("the LPC") as an official committee of

---

1. District Judge of the Western District of Louisiana, sitting by designation.

Hutton's equity holders. Between August, 1988 and February, 1989, payments on the LP Notes or the Bonds relating to LP Notes were made from time to time to Union Planters as trustee. The total of such payments was approximately $6,000,-000. The Trust Agreement contained no term expressly requiring Union Planters to invest the proceeds of the LP Notes or the Bonds[2] and Union Planters did not invest any portion of such payments during the remainder of 1988.

According to the sworn affidavit of Jackson W. Moore ("Moore"),[3] Union Planters received communications from both Hutton and State Mutual claiming exclusive right to the funds which Union Planters held during the bankruptcy proceedings. Moore states that Union Planters offered to hold the disputed funds to a date certain in order to give the contending parties an opportunity to resolve their differences, and further offered to interplead the disputed property, at the request of either party, into a competent court. Moore states that State Mutual, the sole remaining holder of Notes (as defined in the Trust Agreement), repeatedly instructed Union Planters orally and in writing not to take such action, but to continue retaining possession of the disputed property, as the parties hoped to finalize a settlement within a short period of time. Moore states that in January, 1989, State Mutual and Hutton informed Union Planters that the contending parties were preparing a consent order to adjudicate the claim and to specify how Union Planters was to discharge the funds held. According to Moore, at no time prior to late January, 1989, did either party request that Union Planters invest the funds and its counsel advised that there was no requirement to do so.[4]

Jack H. Balzersen, Hutton's counsel during the relevant period, stated in his sworn affidavit:

In January, 1989, the Debtor and State Mutual advised Union Planters that they desired Union Planters to immediately invest the funds it was holding as trustee. On January 27, 1989, the Debtor and State Mutual specifically authorized Union Planters to invest the funds. Union Planters refused to do so until February 7, 1989.

Union Planters invested the funds in U.S. securities.

Hutton filed an adversary proceeding against Union Planters in its bankruptcy case. Hutton asserted claims for breach of contract, breach of fiduciary duty, negligence and unjust enrichment, all regarding Union Planters' "failure" to invest the funds. Union Planters answered, asserting numerous defenses.

On September 10, 1990, Hutton filed a Motion for Partial Summary Judgment in the bankruptcy court. On September 13, 1990, the matter was withdrawn to the District Court for the Northern District of Texas. Both parties filed motions for summary judgment with supporting affidavits. The issues were fully briefed and argued.

On February 11, 1991, the district court entered a Memorandum and Order ("Original Opinion") denying Hutton's motion and granting that of Union Planters. The district court held that a provision in the Trust Agreement, on which Union Planters relied, exculpating Union Planters from liability for actions taken on advice of counsel was not, as Hutton had argued, void as a matter of public policy.

Hutton sought reconsideration of the Original Opinion in a Motion for Alteration, Amendment or Vacation filed on February 21, 1991. Hutton argued that the advice of counsel clause should not preclude its

---

**2.** A term requiring investment was bargained for by Hutton in at least one previous trust indenture with Union Planters.

**3.** Moore served as a partner in the law firm of Wildman, Harrold, Allen, Dixon & McDonnell ("WHADMc") which advised Union Planters during the time and regarding the events in question. Moore also served on Union Planters'

Board. Moore left WHADMc in March, 1989, to become Union Planters' president.

**4.** At oral argument, the Court asked the parties why the question of investment had not been brought up prior to August of 1988. Apparently, prior to Hutton's bankruptcy filing and the mandatory stay, Union Planters distributed the funds which it collected within a few days so no question of investment arose.

claims for breach of fiduciary duty, negligence and unjust enrichment. By a second Memorandum Opinion and Order ("Supplemental Opinion") entered on March 25, 1991, the district court denied Hutton's motion.

Hutton also sought additional time for discovery, which the district court denied.

Hutton appeals.

## ANALYSIS

■ As this is an appeal from a summary judgment, with one exception, we review all issues *de novo*, using the same criteria as the district court and viewing all facts and inferences to be drawn therefrom in the light most favorable to Hutton as the non-prevailing party. *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 268 (5th Cir.1992). We review the district court's refusal to grant Hutton further discovery on an abuse of discretion standard. *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981).

1. *The District Court did not Err in Finding that Union Planters was an Indenture Trustee.*

■ In its Supplemental Opinion, the district court found:

> By the terms of the Trust Agreement, Union Planters received a security interest in, and a pledge of, certain investor notes and investor bonds for the benefit of other noteholders. Therefore, the trust at issue in the case was a trust indenture and Union Planters was an indenture trustee.

Hutton claims that Union Planters was a traditional trustee, rather than an indenture trustee, because the word "indenture" does not appear in the Trust Agreement. As the district court noted in its Supplemental Opinion, however:

> Just as a trust may be created without the term "trust" being used, an indenture trust may be created without a bright sign declaring it "Indenture Trust." It is the substance of the Trust Agreement that determines the character of the trust and the duties of the trustee.

■ We agree. It is the substance of an agreement which governs its character as a trust. *See generally Evans Fur Co. v. Chase Manhattan Bank, N.A. (In re Sakowitz, Inc.)*, 949 F.2d 178 (5th Cir.1991).

■ Hutton also claims that Union Planters was not an indenture trustee because, as it originally held security for only four Purchasers, it held security for the benefit of "a limited group of noteholders" rather than for "public debenture holders." It is true that the difficulties of issuing secured corporate debt to numerous bondholders gave rise to the need for indenture trustees. In the words of one commentator:

> Use of the indenture vehicle in connection with the issuance of corporate debt dates back to the early nineteenth century when the largest enterprises of the day, the railroads, issued debt secured by mortgages. These issuers found it impractical to name all of the original bondholders as mortgagees, since the public records would have to be amended frequently as title to the bonds passed from person to person. Moreover, an 1873 case held that in the absence of a trustee, every single holder had to be a party to a foreclosure action.

Martin D. Sklar, *The Corporate Indenture Trustee: Genuine Fiduciary or Mere Stakeholder?*, 106 Banking L.J. 42, 43–44 (1989) (footnotes omitted).

In other words:

> It would be wholly impractical to have the security run to the group of bondholders directly or to have a separate security instrument for each bondholder. Such action would cause crippling complexity in the execution and enforcement of the security and in cases of transfers of the bonds. To make the transaction feasible the security interest must be centered in a single entity which is to act for the bondholders who purchase their bonds from time to time and for their successors in interest. To give that holder the powers and duties which are desired the trust offers the best legal device available.

G. Bogert, TRUSTS AND TRUSTEES § 250, pp. 254–55 (West 1977).

There is also a need for an indenture trustee for issues of modern day unsecured corporate debentures:

> The debt represented by the debenture is typically not secured by specific assets of the issuer, and is frequently subordinated to senior indebtedness of the issuer. It is usually the case that the debentures of a given issue are held by a great number of parties, and for this reason it was found desirable, as the modern concept of debentures developed, that the indenture designate a corporate trustee to protect the rights of the many holders of the debentures and to perform certain ministerial tasks connected with the normal operation of the debentures. Thus, although the debts created by debentures run directly from the issuer to the holders, the contractual rights conferred by the indenture run from the issuer to the trustee for the benefit of the holders of the debentures.

*Broad v. Rockwell Intern. Corp.*, 642 F.2d 929, 941 (5th Cir.) (en banc) (interpreting New York law), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

■ Hutton appears to maintain that a trustee is not an indenture trustee unless the securities come under the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa *et seq.* (1988), which applies to securities sold to the public by use of the mails or in interstate commerce. The New York common law regarding indenture trustees, which therefore governs this action, existed before the TIA and remains vital. *See United States Trust Co. v. First Nat. City Bank*, 57 A.D.2d 285, 394 N.Y.S.2d 653, 661 (1st Dep't, 1977), *aff'd mem*, 45 N.Y.2d 869, 410 N.Y.S.2d 580, 382 N.E.2d 1355 (1978). Under state law, determination of whether the trustee was an indenture trustee would have no relation to whether the issuer sold the debt in interstate commerce or through the mails. This leaves the number of bondholders as the relevant criterion, under what seems to be Hutton's view, of whether a trustee is an indenture trustee. We believe, however, that it is the nature of the contract and the transaction, rather than the number of beneficiaries, which determines the nature of the trustee. *In re Sakowitz, supra.*

Hutton also contends that all the cases cited by Union Planters involve "debentures," and the Trust Agreement refers to the debt issuance as consisting of "notes." As an *en banc* panel of this Court noted:

> There is no basic or historically established distinction between "debentures" and "notes." There has emerged, however, a clear and useful distinction in modern usage. According to this usage, in the area of longterm debt securities, a security is properly termed a "note" when it is not issued pursuant to an indenture and there is no indenture trustee. However, it may be, and usually is, issued to one or a few purchasers pursuant to a purchase or loan agreement which, in addition to provisions dealing with the terms of purchase, includes many of the contractual rights found in an indenture. In today's nomenclature *the security is properly termed a "debenture" when it is issued pursuant to an indenture and there is an indenture trustee.*

*Broad*, 642 F.2d at 941 n. 12 (*quoting* American Bar Foundation, Commentaries on Indentures at 8) (emphasis added by *Broad* Court).

■ Hutton's position seems to be that since the debt certificates were not called "debentures," and because "the security is properly termed a 'debenture' when it is issued pursuant to an indenture and there is an indenture trustee," Union Planters could not have been an indenture trustee. This puts form over substance. Moreover, as the *Broad* Court noted, "[t]hese distinctions are, of course, merely generalizations; as such, they do not hold true in all cases." 642 F.2d at 941 n. 12. For example, one case upon which Hutton relies, *Hazzard v. Chase National Bank*, 159 Misc. 57, 287 N.Y.S. 541 (Sup.Ct.1936), *aff'd mem.*, 257 A.D. 950, 14 N.Y.S.2d 147 (1st Dep't 1939), *aff'd mem.*, 282 N.Y. 652, 26 N.E.2d 801 (1940), *cert. denied*, 311 U.S. 708, 61 S.Ct. 319, 85 L.Ed. 460 (1940), involved an issuance of corporate debt which, although referred to as "debentures," was secured by corporate stock.

■ We believe that, under New York law, whether an indenture trustee holds a lien on property, a lien on stock, or contractual rights on unsecured debt, it is still an indenture trustee, regardless of what the debt certificates are called.

## II. Level of Duty Owed by Indenture Trustees Under New York Law.

The courts, in expounding and construing New York law regarding indenture trustees, have not always spoken with one voice. There is no doubt, however, that if an indenture trustee owes any fiduciary duties to the beneficiary above and beyond those duties explicitly recited in the trust indenture, they are much more attenuated than those normally owed by trustees.

The court in the seminal *Hazzard* case stated that

> it is now the well-settled doctrine of this state that so long as the trustee does not step beyond the provisions of the indenture itself, its liability is measured not by the ordinary relationship of trustee and cestui, but by the expressed agreement between the trustee and the obligor of the trust mortgage. Where the terms of the indenture are clear, no obligations or duties in conflict with them will be implied.

287 N.Y.S. at 566–67.

The plaintiffs in *Hazzard,* owners and holders of debentures of National Electric Power Company ("NEPC"), sued the indenture trustee following the bankruptcy of NEPC. The debentures were secured by shares of stock. The trust indenture permitted substitution by the obligor of other securities for the securities originally deposited with the indenture trustee. The obligor did indeed substitute other shares of stock, which turned out to be worthless, for the valuable shares originally deposited. The trust indenture purported to exculpate the indenture trustee for any actions not made with bad faith or by gross negligence. The court, in noting that "[t]he defendant, while acting as trustee for these bondholders, was also a large creditor of the obligor, in fact its largest creditor," 287 N.Y.S. at 548, stated that

"[i]t is obvious that the defendant, as a creditor of the obligor, occupied a position inconsistent with its role as a trustee under the indenture." *Id.* Nevertheless, the court found that the plaintiffs had failed to prove either bad faith or gross negligence on the part of the indenture trustee in allowing the obligor to make the substitution. *Id.* 287 N.Y.S. at 551–52.

Regarding "ordinary" negligence,[5] however, the *Hazzard* court stated that "[i]t is clear that if it were not for the terms of the indenture, the defendant could not escape the conclusion that it was negligent towards its bondholders." *Id.* 287 N.Y.S. at 564. The indenture trustee was not liable to the bondholders, however, because

> [t]he corporate trustee has very little in common with the ordinary trustee, as we generally understand the fiduciary relationship.... The trustee under a corporate indenture ... has his rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement. His status is more that of a stakeholder than one of a trustee.

*Id.* 287 N.Y.S. at 570.

The Second Circuit reached a somewhat different conclusion in *Dabney v. Chase National Bank,* 196 F.2d 668 (2d Cir.1952), *appeal dismissed,* 346 U.S. 863, 74 S.Ct. 102, 103, 98 L.Ed. 374 (1953). As in *Hazzard,* the indenture trustee in *Dabney* was a creditor of the obligor. The bondholders sued the indenture trustee, alleging that it had prematurely collected a debt from the obligor, forcing it into bankruptcy. Judge Learned Hand, in finding the indenture trustee liable, stated that

> the duty of a trustee, not to profit at the possible expense of his beneficiary, is the most fundamental of the duties which he accepts when he becomes a trustee. It is a part of his obligation to give his beneficiary his undivided loyalty, free from any conflicting personal interest; an obligation that has been nowhere more jealously and rigidly enforced than in New York where these indentures were executed.

*Id.* at 670 (footnote omitted).

**5.** After a lengthy discussion of the difficulty of grading different levels of negligence, the court concluded that gross negligence "includ[es] a mental attitude of reckless and wanton disregard of the rights of others." 287 N.Y.S. at 556.

Judge Hand dismissed[6] language from *Hazzard* indicating that indenture trustees are not fiduciaries by saying:

That language we read only as criticism of practices that had grown up, and not as asserting that the courts of New York had given any countenance to the notion that, so far as a corporation sees fit to assume the duties of an indenture trustee, it can shake off the loyalty demanded of every trustee, corporate or individual. We can find no warrant for so supposing; and, indeed, a trust for the benefit of a numerous and changing body of bondholders appears to us to be preeminently an occasion for a scruple even greater than ordinary; for such beneficiaries often have too small a stake to follow the fate of their investment and protect their rights.

*Id.* at 671.

In yet another case in which an indenture trustee was accused[7] of favoring its own position as a creditor over the position of the debenture holders, a New York court cited *Dabney* favorably and agreed with Judge Hand's view of *Hazzard. United States Trust Co. v. First Nat. City Bank,* 57 App.Div.2d 285, 394 N.Y.S.2d 653 (1st Dep't 1977), *aff'd mem,* 45 N.Y.2d 869, 410 N.Y.S.2d 580, 382 N.E.2d 1355 (1978).

These cases imply that an indenture trustee bears at least as much, if not more, of a fiduciary duty than a general trustee. More recently, however, the Second Circuit voiced different sentiments in *Meckel v. Continental Resources Co.,* 758 F.2d 811 (2d Cir.1985). In that case, the obligor, Florida Gas Co., had issued convertible, subordinated 20 year debentures in 1969. Ten years later, Florida Gas merged with Continental Resources Co. and decided to redeem the debentures. The debenture holders were given a certain amount of time to exercise their conversion option, for what was at that point a very attractive price. *Id.* at 814. Some of the debenture holders did not exercise this option. Their broker, after voluntarily paying estimated damages to its clients, sued Continental Resources Co., claiming it had not received the required notice of the redemption. Continental Resources impleaded the indenture trustee which, after offering proof by affidavit that it had notified the debenture holders "by mail" as required by the trust indenture, moved for summary judgment. Plaintiffs claimed that even if the indenture trustee had, as its affiants claimed, sent notice by first class mail, that it failed in its fiduciary duty by not taking further steps to make sure that notice was received. In affirming summary judgment in favor of the indenture trustee, the Second Circuit stated:

An indenture trustee is not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.

758 F.2d at 816.

■ The Court decided *Meckel* under the TIA, but we do not consider this to be significant. As discussed *supra,* the TIA did not supplant state law, and debenture holders under the TIA would certainly have *at least* as much protection under the TIA as they would in an action, such as the one before us, governed strictly by state law. *See United States Trust Co.,* 394 N.Y.S.2d at 661 ("[w]e do not think that the Trust Indenture Act was intended in any way to take away from debenture holders any protections which they had before the Act."). We note with interest that the Second Circuit in *Meckel* cited neither *United States Trust Co.,* nor its own precedent in *Dabney.* Rather, it relied only on *Hazzard.* We note also that, unlike the aforementioned cases, there is no indication in *Meck-*

---

**6.** In the words of one commentator "[s]omewhat disingenuously." Sklar, 106 Banking L.J. at 53.

**7.** In this case the plaintiff was a successor indenture trustee.

*el* that the indenture trustee was itself a creditor of the issuer who favored its own interests as a creditor over those of the beneficiaries.

The Second Circuit reconciled *Meckel* and *Hazzard* with *Dabney* and *United States Trust Co.* in *Elliot Assoc. v. J. Henry Schroder Bank & Trust Co.,* 838 F.2d 66 (2d Cir.1988). In *Elliot,* debenture holders sued the indenture trustee, claiming that it had colluded with the issuer in prematurely redeeming an issue of convertible subordinated debentures. The issuer had informed the indenture trustee that it wished to set the redemption date on May 16, 1986. As it happens, the record date for the next interest payment was the close of business on May 15, 1986. The indenture trustee acquiesced to the date suggested notwithstanding the fact that the trust indenture gave the trustee the right to request a postponement until May 24. The May 16 redemption date undoubtedly required that the conversion option, which was economically attractive and which was universally exercised, be exercised prior to the close of business on May 15. The debenture holders clearly could not collect the interest to which they would have been entitled had they been the holders of record of the debentures on the record date. The parties disputed whether the holders would have had a right to the interest payment had the redemption date fallen between the May 15 record date and the June 1 payment date. The Court found it unnecessary to resolve this issue, however.

The plaintiffs in *Elliot* claimed that the indenture trustee was "obligated to weigh the financial interests of the debenture holders" before agreeing to the May 16 redemption date. *Id.* at 70. After finding no such obligation in the TIA, the Second Circuit stated that "[i]t is equally well-established under state common law that the duties of an indenture trustee are strictly defined and limited to the terms of the indenture." *Id.* at 71 (citations omitted). Because the trust indenture did not specifically state that the indenture trustee had to weigh the financial interests of the debenture holders, the Second Circuit concluded that the plaintiffs' "claim essentially

is that the trustee was under a duty—implied from the indenture, Act or state law—to secure greater benefits for the debenture holders over and above the duties and obligations it undertook in the indenture." *Id.* The Court concluded that

> so long as the trustee fulfills its obligations under the express terms of the indenture, it owes the debenture holders no additional, implicit pre-default duties or obligations except to avoid conflict of interest.

*Id.* at 71.

Once again, there is no indication that the indenture trustee in *Elliot* was a creditor of the issuer who was attempting to protect its own position at the expense of the beneficiaries.

Regarding *Dabney,* the *Elliot* Court stated:

> [W]hile *Dabney* stands for the proposition that a trustee must refrain from engaging in conflicts of interest, it simply does not support the broad proposition that an implied fiduciary duty is imposed on a trustee to advance the financial interests of the debenture holders during the period prior to default. Because no evidence was offered in the instant case to suggest that [the indenture trustee] benefitted, directly or indirectly, from its decision to waive the 50-day notice, and thus did not engage in a conflict of interest, it is clear that *Dabney* is inapposite to the instant case.

*Id.* at 73.

The Second Circuit reached this conclusion despite the fact that it is the issuer, not the beneficiaries, who chooses the indenture trustee and pays its bills. In a scholarly article, one of the attorneys for the plaintiffs in *Elliot* asked rhetorically:

> How can the court suggest that there is no conflict of interest when it is the issuer who pays the indenture trustee's bills and it is the class of issuers that typically provides most of the trustee's livelihood? There is an inherent conflict arising out of the nature of the relationship between issuer and trustee, a conflict that is likely to color any discretionary act of the trustee.

Sklar, 106 Banking L.J. at 59 (footnote omitted).[8]

Apparently, the Second Circuit takes a strict view of conflict, and would not take into account such hypothetical possibilities of conflict. The *Elliot* Court stated that

except for bald assertions of conflict of interest, [plaintiffs] present[ ] no serious claim that [the indenture trustee] personally benefitted in any way from the waiver, or that, by waiving the notice period, it was taking a position that would harm the interests of the debenture holders and correspondingly inure to the trustee's benefit.

*Elliot,* 838 F.2d at 70.

■ While this Court *en banc* has assumed *arguendo, without deciding,* that an indenture trustee, under New York law, may have fiduciary duties beyond the narrow confines of the trust agreement, *Broad,* 642 F.2d at 959, the Second Circuit, which is intimately familiar with the nuances of New York law, has more recently concluded that the heightened fiduciary duties described in *Dabney* are not activated until a conflict arises where it is evident that the indenture trustee may be sacrificing the interests of the beneficiaries in favor of its own financial position. There must be a clear possibility of this evident from the facts of the case, e.g., where the indenture trustee is a general creditor of the obligor, who is in turn in financial straits. A mere hypothetical possibility that the indenture trustee might favor the interests of the issuer merely because the former *is* an indenture trustee does not suffice.

■ It is tempting at this point to hold that Union Planters' duty was governed strictly by the Trust Agreement, which did not mention a duty to invest. After all, "[w]e may affirm a summary judgment on grounds other than those relied upon by the district court when there is an adequate and independent basis for that disposition." *Morales v. Department of the Army,* 947 F.2d 766 (5th Cir.1991). Principles of judicial restraint, however, dictate that important issues of New York law, such as the existence and extent of the fiduciary duties of indenture trustees, are best left to New York courts when the issues presented to us can be resolved on less divisive grounds. *C.f. Crum v. American Airlines, Inc.,* 946 F.2d 423, 426 (5th Cir.1991) ("[p]rinciples of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.") (*quoting Manning v. Upjohn Co.,* 862 F.2d 545, 547 (5th Cir. 1989)).

We believe that this is the wise course in this case because, unlike *Meckel* and *Elliot,* which dealt with "pre-default" duties, this case sounds in bankruptcy. Moreover, it appears that the historical reason that an indenture trustee was seen as a mere stakeholder is that he must consider the interests of the issuer as well as the beneficiaries. *See* Posner, *Liability of the Trustee Under the Corporate Indenture,* 42 Harv.L.Rev. 198 (1928). If this consideration is relevant to the question of investing the funds, it would only be so to the extent that *both* the issuer and the beneficiaries would wish the trustee to do so. Therefore, while there is no question that, under New York law, "[a]n indenture trustee is unlike the ordinary trustee," *AMBAC Indem. Corp. v. Bankers Trust Co.,* 573 N.Y.S.2d 204, 206 (N.Y.Sup.Ct., N.Y. County 1991), we do not now state definitively that Union Planters had no duty to invest.

In order to base our affirmance on the district court's conclusion that the advice-of-counsel exculpatory clause was valid, it suffices for us to conclude that the fiduciary duty of Union Planters to invest the funds was probably dubious and at best an open question.

III. *Union Planters was Entitled to Rely on Advice of Counsel in not Investing the Funds.*

■ Section 14 of the Trust Agreement in this case provides in pertinent part that

---

**8.** In *Broad* we noted, *en banc,* that "[a]rguably, the [indenture trustee] faced a ... conflict of interest in the case at bar when [the obligor] threatened to bring a lawsuit, to withdraw other business it had with the [indenture trustee], and to force the [indenture trustee]'s resignation as Trustee if it refused" to accede to the obligor's demands. 642 F.2d at 959.

Union Planters "may consult with legal counsel and shall not be liable for any action taken, suffered or omitted in good faith in accordance with the advice of such counsel, provided that such legal counsel was selected by [Union Planters] with due care." As the *Hazzard* court stated, "[s]imilar exculpatory clauses have been upheld time and again as valid and not contrary to the public policy of" New York. 287 N.Y.S. at 565. *See also Broad*, 642 F.2d at 959 (indicating the validity of an exculpatory clause almost identical to the one at issue).

Hutton cites U.S. district court authority from the Southern District of New York and from the Western District of Arkansas in support of the proposition that exculpatory clauses excusing a general trustee from negligence, gross negligence or willful misconduct are ineffective or must be strictly construed. As discussed *supra*, however, the *Hazzard* court found that an indenture trustee is not liable for what would be considered negligent action on the part of a general trustee, cloaked with fiduciary duty. 287 N.Y.S. at 564.

Even if Union Planters were generally liable for negligence, we have concluded that a fiduciary duty for Union Planters to invest the funds was at best an open question, and reliance on advice of counsel to resolve an open question of law is not negligence. *A fortiori*, it does not indicate gross negligence or bad faith. Hutton has submitted no summary judgment evidence which demonstrates a genuine issue of material fact regarding negligence or bad faith in Union Planters' reliance on advice of counsel.

While it is true that, under New York law, "[t]he duty of a [general trustee] to keep ... funds not necessary for distribution within a reasonably short time invested is well established," *Matter of Estate of Meister*, 123 A.D.2d 264, 506 N.Y.S.2d 437, 440 (1st Dep't 1986) (citations omitted), "[w]here under all the circumstances it appears that the trustee was not under a duty to invest trust money but merely to safeguard it, he is not liable for interest because of his failure to invest it." 2A

SCOTT ON TRUSTS § 181, at 544 (4th ed. 1987). Moreover, "failure to invest may be justified ... where the trustee has a reasonable expectation that he may be called on to make distribution at an early date." *Id.* at 543. Whatever force there may be to the contention that exculpatory clauses cannot relieve trustees of clear fiduciary duties, Union Planters was not liable under the Trust Indenture for its reliance on advice of counsel regarding a duty of dubious existence.

Moreover, we cannot say that the district court abused its discretion in not allowing Hutton to conduct further discovery regarding Union Planters' compliance with the advice-of-counsel clause. As the district court noted, Hutton knew from the outset that Union Planters intended to rely on the advice-of-counsel defense, and plaintiffs had seven months to conduct this discovery. We have stated that "[i]f ... the nonmoving party has not diligently pursued discovery ..., the court need not accommodate the nonmoving party's belated request." *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991), *cert. denied*, ― U.S. ―, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). We do not take seriously Hutton's argument that it did not seek discovery sooner for reasons of "judicial economy." Hutton was certainly entitled to hope that the district court would agree with its contention that the exculpatory clause was invalid, but plaintiffs were not entitled to rely on their contention to the exclusion of conducting discovery regarding other issues such as, if the clause were valid, whether or not Union Planters properly complied with it.

Nor does the fact that, after receiving instructions to invest the funds on January 27, 1989, Union Planters did not so invest until February 7, 1989, indicate any genuine, material issue. This is because "[t]he trustee can properly take a reasonable amount of time in looking out for proper trust investments and is not liable for failure to make the property productive during such time." Scott at 542 (footnote omitted).

IV. *Union Planters had no Duty to Invest Under the Bankruptcy Code.*

Hutton contends that even if Union Planters had no fiduciary duty to invest, or if the exculpatory clause excused duties under New York law which allegedly would have required investment, Union Planters still had a duty to invest under the Bankruptcy Code.

The parties agree that Union Planters was a "custodian" according to the Bankruptcy Code. A custodian is defined as a

> trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C.A. § 101(11)(C) (West Supp.1991).

Congress has enumerated the duties of a custodian in section 543(b)—nowhere is a duty to invest listed. This section does state:

> A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

11 U.S.C.A. § 543(a) (West Supp.1991).

■ Union Planters suggests that this might actually proscribe investment. Hutton, however, claims that Union Planters was a fiduciary of Hutton, and is therefore governed by section 345, which states:

> A trustee in a case under this title *may* make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

11 U.S.C. § 345(a) (1988) (emphasis added).

Accepting *arguendo* that this section applies to this case, Union Planters would still not have had a duty to invest. One court has stated that "[t]he language of § 345(a) is permissive. The Trustee is not required to invest estate funds." *United States ex rel. The Peoples Banking Co. v. Derryberry (In re Peckinpaugh)*, 50 B.R. 865, 868 (Bankr.N.D.Ohio 1985). In another case, cited by Hutton, the district court found that "the trustee is required to deposit the funds in interest-bearing accounts or to use the funds for an income producing investment whenever it reasonably appears that a substantial amount of funds may remain idle for a long period of time." *Judge v. Pincus, Verlin, Hahn & Reich, P.C. (In re J & J Record Distributing Corp.)*, 84 B.R. 364, 369 (E.D.Penn.1988). The court held the trustee liable for leaving funds in a non-interest bearing account for over a year. The court, however, also stated that "[t]he language of the statute clearly vests the discretion with the trustee." *Id.* at 367. In the case before us, the funds remained idle for only a few months, during which time Hutton and State Mutual informed Union Planters that a settlement was near. Therefore, even if section 345 applies, Union Planters is clearly not liable.

V. *The District Court did not Err in Granting Summary Judgment on Hutton's Unjust Enrichment Claim.*

■ Hutton contends that even if the advice-of-counsel clause was valid, it could not exculpate Union Planters from claims arising beyond the contract, and that therefore the district court erred in granting summary judgment to Union Planters on Hutton's unjust enrichment claim.

We cannot agree with Hutton's position. The general rationale behind unjust enrichment is " 'to prevent one person who has obtained a benefit from another without ever entering into a contract with that person from unjustly enriching himself at the other person's expense.' " *Hartford Fire Ins. v. Federated Dept. Stores*, 723 F.Supp. 976, 974 (S.D.N.Y.1989) (*quoting Chadirjian v. Kanian*, 123 A.D.2d 596, 506 N.Y.S.2d 880, 882 (1986)). *See also Seiden Associates, Inc. v. ANC Holdings, Inc.*, 768 F.Supp. 89, 97 (S.D.N.Y.1991) ("[plaintiff] may not receive, on a quasi contract, relief

that it cannot receive under the written contract that defines fully the parties' rights and duties.").

We are not at all sure that Union Planters was in any meaningful way "enriched." Even if it were, however, under New York law, where "there is an express contract governing the subject matter that was not breached, there can be no unjust enrichment." 723 F.Supp. at 974. *See also Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,* 691 F.2d 1039, 1053 (2d Cir. 1982) ("[i]t is not unjust enrichment [for an indenture trustee] to earn interest on a sum which is the subject of future or pending litigation absent contractual provisions directing otherwise."), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983). Therefore, the district court did not err in finding no genuine issue of material fact regarding Hutton's claim of unjust enrichment.

## CONCLUSIONS

The fiduciary duty of an indenture trustee is at best an open question, and Union Planters breached no duty in relying on advice of counsel clause. Moreover, even accepting *arguendo* that 11 U.S.C. § 345(a) applies to Union Planters, it had no duty to invest under the bankruptcy code because the funds remained idle for only a few months, during which time the parties informed Union Planters that settlement was imminent. Finally, Hutton has presented no evidence that Union Planters was unjustly enriched. Therefore, after reviewing these issues *de novo,* we conclude that the district court committed no error. Nor did the district court abuse its discretion in refusing to allow more time for Hutton to engage in discovery regarding an issue of which it had been aware for seven months.

For the reasons discussed above, the judgment of the district court is

AFFIRMED.