In the Matter of INVESTORS SECURI-TY CORPORATION, Bankrupt.

Thomas P. RAVIS, Esq., Trustee for Investors Security Corporation, Plaintiff,

v.

Leonard LABRIOLA and Mary Ann Labriola, Defendants.

Bankruptcy No. 75–1036.

United States Bankruptcy Court, W. D. Pennsylvania.

July 30, 1980.

---

James E. White, Stevens, Clark, Laubach & Semple, Pittsburgh, Pa., for trustee.

Charles F. Scarlata, Scarlata & Deriso, Pittsburgh, Pa., for claimants.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is the objection of Leonard and Mary Ann Labriola to the trustee's determination denying their claim of $100,000.00 in the liquidation of Investors Security Corporation (the Debtor) pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. (SIPA). On September 15, 1975, upon application of the Securities Investor Protection Corporation (SIPC), United States District Judge Daniel J. Snyder, Jr., found that the customers of the Debtor were in need of the protection afforded under the SIPA and appointed Thomas P. Ravis, Esq., as trustee for the liquidation of the Debtor. On September 26, 1975, by Order of Judge Snyder, the liquidation proceeding of the Debtor was referred to this Court.

The instant litigation arises out of the trustee's determination that the petitioners' recovery was limited to $20,000.00 pursuant to Section 6(f)(1)(A) of the SIPA, 15 U.S.C. § 78fff(f)(1)(A), as their claim was a valid customer claim for a cash net equity of $100,000.00. Claimants assert, however, that they are entitled to a recovery in the full amount of their $100,000.00 claim and request this Court to direct the SIPC to pay them the $80,000.00 balance that is due and owing from Investors Security Corporation.

The trial of this cause was held before the Court. The Court, having heard the evidence and considered the testimony, depositions and briefs filed on behalf of the parties, makes the following Findings of Fact:

## Findings of Fact

On November 26, 1975, Leonard Labriola and Mary Ann Labriola filed a customer claim with Trustee Ravis claiming, alternatively, a $100,000.00 cash credit balance or a Pittsburgh National Bank $100,000.00 certificate of deposit. The trustee denied their customer claim on May 20, 1977, and relegated them to the status of general creditor because of a written agreement, dated August 18, 1975, which evinced a contractual, rather than a usual customer, relationship between them and the Debtor. Subsequently, the Trustee reconsidered the Labriolas' customer claim after an extensive examination of the books and records of the Debtor. He determined that their claim was a valid customer claim for a cash net equity of $100,000.00, which was the principal proceeds of a $100,000.00 certificate of deposit maturing on July 11, 1975. Holding that Section 6(f)(1)(A) of SIPA, 15 U.S.C. § 78fff(f)(1)(A), limited the claimants' recovery to $20,000.00, the Trustee mailed them a Notice of Trustee's Determination of Claim on November 13, 1978 and a check for $20,000.00. The Labriolas acknowledged receipt of the $20,000.00 check.

The testimony during the course of these proceedings revealed the creation of two separate Labriola accounts with the Debtor: (1) the first, established in January, 1974, which is the individual account of Leonard Labriola; and (2) the second, established in April, 1974, which is the joint account of Leonard Labriola and Mary Ann Labriola. The history of these accounts is as follows.

In January, 1974, Mr. Labriola was approached by John DeLallo, who was a registered representative of Investor Security

Corporation, regarding a possible investment with the Debtor. DeLallo had been the Labriolas' close financial advisor and confidant for a number of years. As a result of DeLallo's advice, Mr. Labriola delivered $50,000.00 in cash to DeLallo for the sole purpose of purchasing a $50,000.00 certificate of deposit.

It was Mr. Labriola's understanding that DeLallo would take care of the formalities required in opening an account with the Debtor. DeLallo delivered the $50,000.00 to William Brown, President of the Debtor. There is no formal evidence that a certificate of deposit was purchased. Mr. Labriola did, however, receive the interest payments of 9⅛% on his $50,000.00 investment from January, 1974 until July, 1975.

In April, 1974, Leonard Labriola and Mary Ann Labriola signed joint customer account cards with the Debtor and opened a joint account. At that time, they delivered $50,000.00 in cash to the Debtor for the sole purpose of purchasing a certificate of deposit. Although they did not disclose to William Brown where they had obtained the $50,000.00, the Labriolas had received $10,000.00 and $5,000.00, respectively, from Fred Parks and Margaret Parks, who are the brother and sister of Mrs. Labriola. Timely interest payments on the joint account were paid to the claimants until July, 1975.

As a result of DeLallo's advice that a single $100,000.00 certificate of deposit would yield higher interest, the Labriolas made periodic attempts to consolidate their two $50,000.00 investments into one $100,000.00 certificate of deposit. Despite their requests, Brown never carried out their order, but explained that their two $50,000.00 investments had been consolidated with other customers' monies to purchase a $300,000.00 certificate of deposit. Since they were receiving interest when due, Mr. and Mrs. Labriola accepted this explanation.

During the spring of 1975, the Labriolas encountered a great deal of difficulty in recovering $40,000.00 which they had given Mr. Brown to hold as an escrow agent in connection with a mortgage that is unrelated to any SIPA claim. This difficulty caused the Labriolas to become concerned about their two $50,000.00 investments with the Debtor. Thus, in July, 1975, the apparent maturity date of the certificates of deposit, the Labriolas demanded the return of their investments totaling $100,000.00. Neither, however, had been returned at the time of filing of the liquidation of the Debtor.

Pursuant to the advice of DeLallo, Mr. Labriola entered into an agreement with Mr. Brown on August 18, 1975, in order to obtain the $100,000.00 principal of his and his wife's investments with the Debtor. This agreement does not accurately reflect the relationship between the parties. No sums were ever paid under the agreement.

*Discussion*

*A. Allegations of the Parties*

Claimants argue that Leonard Labriola's individual account and Mr. and Mrs. Labriola's joint account should be treated as accounts belonging to separate customers. They contend that separate customer treatment would entitle each account to the maximum protection available to a customer of the Debtor pursuant to Section 6(f)(1)(A): $50,000.00, if the claim is one for securities, or $20,000.00, if it is one for cash. They rely on the statutory definition of "customer" provided in Section 6(c)(2)(A)(ii), 15 U.S.C. § 78fff(c)(2)(A)(ii), and on the provisions in the SIPA which provide for multiple recoveries, Section 6(f)(1)(B), 15 U.S.C. § 78fff(f)(1)(B) (different customer status recognized in the computation of "net equity"). Claimants support this argument by reference to SIPC's Series 100 Rules, 3 CCH Fed.Sec.L.Rep. ¶ 26,667, which set forth the circumstances under which accounts that are held by the same individual shall be treated as accounts of "separate customers."

In the alternative, claimants allege that the nature of the relationship between themselves and Fred and Margaret Parks indicates that the two accounts were held by two separate customers of the Debtor.

They argue that Mr. Labriola held the first account in an individual capacity, and that they held the second account in an agent or trust capacity with respect to the Parks' $15,000.00 contribution.

The claimants also argue that their claim is one for securities, thereby entitling them to the $50,000.00 maximum award outlined in SIPA § 6(f)(1)(A). They contend that they did not direct the Debtor to liquidate their holdings, nor that they authorized the Debtor to retain their funds. They argue that a claim for cash would constitute a free credit balance of funds that was left with the broker–dealer by a customer.

The SIPC maintains, however, that the claimants had but one account with a single net equity of $100,000.00. SIPC alleges that the Labriolas' claim is one for cash and, therefore, is protected by SIPC's funds only up to a maximum of $20,000.00, pursuant to SIPA § 6(f)(1)(A). SIPC argues that the claimants' rights should not be enlarged because of any alleged beneficial interest of the Parks, citing *SIPC v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314 (2d Cir. 1976), *cert. denied* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976) (holding that each of the 108 employee–beneficiaries of a trust created under a profit–sharing plan does not qualify as a "customer" of a bankrupt broker–dealer).

Alternatively, SIPC argues that even if this Court finds two separate accounts, they should be treated as belonging to one customer. SIPC contends that the definitional provision of "net equity" contained in SIPA § 6(c)(2)(A)(iv), 15 U.S.C. § 78fff(c)(2)(A)(iv), expressly contemplates a situation where a customer holding more than one account is limited to one recovery.

### B. SIPC Protection

■ The Court's findings establish the existence of two separate accounts: the individual account of Mr. Labriola and the joint account of Mr. and Mrs. Labriola. The crucial determination in this case is whether the two accounts may be treated as accounts belonging to separate customers.

SIPA establishes a distribution scheme which divides claimants (other than those entitled to priority) into three classes: (1) cash customers, claimants who are able to "specifically identify" their property in accordance with the procedures outlined in SIPA § 6(c)(2)(C)(ii)(I) and (II), 15 U.S.C. § 78fff(c)(2)(C)(ii)(I) and (II); (2) all other customers, a class that includes persons who have deposited cash with the debtor for the purpose of purchasing securities, SIPA § 6(c)(2)(A)(ii), 15 U.S.C. § 78fff(c)(2)(A)(ii); and (3) general creditors.

The claimants here belong to the class of "all other customers", as they are unable to specifically identify their property, but gave cash to the Debtor for the purpose of purchasing securities. The SIPA accords preferential treatment to this class by giving it priority over general creditors, SIPA § 6(c)(2)(B), 15 U.S.C. § 78fff(c)(2)(B). Claims for the "net equity" of their accounts are satisfied ratably out of a "simple and separate fund", SIPA § 6(c)(2)(B), 15 U.S.C. § 78fff(c)(2)(B). To the extent that the debtors' assets are insufficient to satisfy these claims, SIPC will advance up to $50,000.00 per customer if the claim is one for securities, or up to $20,000.00 if the claim is one for cash. SIPA § 6(f)(1)(A), 15 U.S.C. § 78fff(f)(1)(A).

### C. Separate Customer Treatment

The liquidation procedure outlined in the SIPA contemplates situations where accounts held by the same individual in different capacities shall be treated as accounts of "separate customers". The determinative factor of separate customer treatment is whether the individual held the accounts "in separate capacities". SIPA § 6(c)(2)(A)(iv) (definitional provision of "net equity"); SIPA § 6(f) (provision outlining the "limits of protection"). Section 6(c)(2)(A)(iv) states that the

"net equity" of a *customer's account or accounts* means the dollar amount thereof determined by giving effect to open contractual commitments completed as provided in subsection (d) of this section, by excluding any specifically identifiable

property reclaimable by the customer, and by subtracting the indebtedness, if any, of the customer to the debtor from the sum which would have been owing by the debtor to the customer had the debtor liquidated, by sale or purchase on the filing date, all other securities and contractual commitments of the customer, and *for purposes of this definition, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.*

15 U.S.C. § 78fff(c)(2)(A)(iv) (emphasis added). Additionally, Section 6(f) provides:

SIPC advances to trustee.–

(1) Advances for customers' claims.–In order to provide for prompt payment and satisfaction of the net equities of customers of debtor, SIPC shall advance to the trustee such moneys as may be required to pay or otherwise satisfy claims in full of each customer, but not to exceed $50,000 for such customer except that—

(A) insofar as all or any portion of the net equity of a customer is a claim for cash, as distinct from securities, the amount advanced by reason of such claim to cash shall not exceed $20,000;

*(B) a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity.*

15 U.S.C. § 78fff(f) (emphasis added).

SIPC's Series 100 Rules (the Rules), 3 CCH Fed.Sec.L.Rep. ¶ 26,667, outline the circumstances under which an individual holds accounts "in separate capacities." Moreover, Subsection 3 of Rule 105 states that "[p]articipation in a qualifying joint account shall not preclude any co–owner from being a 'separate customer' by reason of an individual account with the member." Subsection (b)(1) of Rule 105 provides the definition of a "qualifying joint account:"

A joint account shall be deemed to be a "qualifying joint account" if it is owned jointly, whether by the owners thereof as joint tenants with right of survivorship, as tenants by the entirety, or as tenants in common, or by husband and wife as community property, but only if each co-

owner has executed a joint account agreement or similar agreement with the member and possesses authority to act with respect to the entire account.

This Court holds that the joint account between Mr. and Mrs. Labriola is a "qualifying joint account", as defined in Rule 105. The signing of the joint account cards by Mr. and Mrs. Labriola supplied the requisite formalities of a joint account agreement. Furthermore, both Mr. and Mrs. Labriola individually had authority to act with respect to the entire account. The account, as a separate customer, is therefore entitled to an advancement of SIPC funds, which is available to each co–owner in proportion to his interest in the joint account. Rule 105 § (b)(2).

■ Since the Labriolas' loss arose from cash deposited with the Debtor, the account is entitled to a maximum award of $20,000.00. SIPA § 6(f)(1)(A). Claimants' argument that their claim is one for securities is unpersuasive. The plain meaning of SIPA § 6(f)(1)(A) contemplates situations, such as this one, where money is deposited with the broker for the purpose of purchasing securities, but where the broker has failed to purchase the securities.

Pursuant to Rule 105 § 3, Mr. Labriola is not precluded from being a "separate customer" with the Debtor. His individual account entitles him to an award of up to $20,000.00, as his loss also arose from cash deposited with the Debtor.

■ Claimants' allegation that the "trust" relationship between themselves and the Parks increases SIPA recovery is clearly erroneous. The joint account between Mr. and Mrs. Labriola does not meet the requirements of a "qualifying trust account" under Rule 104.

Based on the foregoing, the Court concludes that separate customer treatment of the accounts is required pursuant to the liquidation procedure outlined in SIPA, and that each account is entitled to a maximum protection of $20,000.00 under SIPA § 6(f)(1)(A). Since the claimants have already received a $20,000.00 advancement

from the trustee on their joint account, it is therefore Ordered and Decreed that the trustee advance Mr. Labriola $20,000.00, in relief for his loss on the individual account. Claimants must claim as general creditors the balance of their losses.