**In re ADLER, COLEMAN CLEARING
CORP., Debtor.**

**Bankruptcy No. 95 B 08203 (JLG).**

United States Bankruptcy Court,
S.D. New York.

Jan. 2, 1997.

Cleary, Gottlieb, Steen & Hamilton, New York City, for the Trustee.

Paul, Hastings, Janofsky & Walker LLP, New York City, for Keith and Susan Jensen.

Haftel & Silverman, P.C., New York City, for Michael and Roselva Marie Yost.

Laird R. Kelly, Demarest, New Jersey, Pro Se.

John Quackenbush, Wellington, Florida, Pro Se.

Kenneth J. Caputo, Associate General Counsel, Washington, DC, for SIPC.

*DECISION ON MOTION FOR ORDER UPHOLDING TRUSTEE'S DETER-MINATIONS DENYING CLAIMS OF CERTAIN CUSTOMERS WHO FILED CLAIMS AFTER STATUTORY BAR DATE AND EXPUNGING OBJEC-TIONS WITH RESPECT TO THOSE DETERMINATIONS*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Edwin B. Mishkin, SIPA Trustee (the "Trustee") for the liquidation of Adler Cole-man Clearing Corp. ("Adler Coleman" or the "debtor"), moves for an order upholding his determination that certain claims filed after September 22, 1995 (the "Bar Date") are not valid claims against the debtor because they are untimely under the relevant provisions of the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa–*lll*, as amended ("SIPA"), and expunging the claimants' objections to his determinations. We grant the motion.

### *Facts*

On February 27, 1995, the Honorable Loretta A. Preska, United States District Judge for the Southern District of New York, entered an order pursuant to SIPA § 78eee(b) finding, among other things, that debtor's customers required the protections afforded by SIPA. Judge Preska appointed the Trustee to liquidate debtor's business and removed the liquidation proceeding to this court.

Adler Coleman was a member of the Securities Investors Protection Corporation ("SIPC") and a broker-dealer registered with the Securities and Exchange Commission ("SEC"). It principally acted as a clearing firm on a disclosed basis for approximately 42 introducing firms. Hanover Sterling & Co., Ltd. ("Hanover"), also an SIPC member and registered broker-dealer, was one of the introducing firms whose trades were cleared by debtor. It ceased operating on February 24, 1995 and like debtor is being liquidated under SIPA.

Over 66,000 active customer accounts whose trades cleared through the debtor were frozen as of February 27, 1995 and debtor's customers could not trade in their accounts. Between March 18, 1995 and April 26, 1995, the Trustee transferred all but approximately 1,500 accounts to third party broker-dealers. Hanover introduced the majority of those 1,500 accounts. To date, the Trustee retains approximately 370 customer accounts containing assets for which customer claims were filed.

Pursuant to SIPA § 78fff–2(a)(1) and our March 10, 1995 order, the Trustee mailed

notice of the commencement of this liquidation proceeding (the "Notice"), together with a Customer Claim Form and a brochure entitled "How SIPC Protects You" (collectively, the "Claim Package") to Adler Coleman's customers. He published the Notice in the national and local editions of THE WALL STREET JOURNAL and THE NEW YORK TIMES on March 22, 1995. Among other things, in accordance with SIPA § 78fff-2(a)(3), the Notice fixed a Bar Date of September 22, 1995; i.e. 6 months after the March 22, 1995 Notice. In relevant part, the Notice states:

### COMMENCEMENT OF LIQUIDATION PROCEEDING

NOTICE IS HEREBY GIVEN that on February 27, 1995, the Honorable Loretta A. Preska, Judge of the United States District Court for the Southern District of New York, entered an Order granting the application of the Securities Investor Protection Corporation for issuance of a Protective Decree adjudicating that the customers of Adler, Coleman Clearing Corp. (the "Debtor"), are in need of the protection afforded by the Securities Investor Protection Act of 1970 ("SIPA"). Edwin H. Mishkin, Esq. was appointed Trustee for the liquidation of the business of the Debtor, and Cleary, Gottlieb, Steen & Hamilton was appointed as counsel to the Trustee.

Customers of the Debtor who wish to avail themselves of the protection afforded to them under SIPA are required to file their claims with the Trustee within sixty (60) days after the date of this Notice. Even customers whose accounts have been transferred to a different clearing broker must file a claim in order to assure the availability of the protection afforded under SIPA. Such claims should be filed with the Trustee at P.O. Box 1093, Wall Street Station New York, New York 10268–1093. Customer claims will be deemed filed only when received by the Trustee.

Forms for the filing of customers' claims are being mailed to customers of the Debtor as their name and addresses appear on the Debtor's books and records. Customers who do not receive such forms within seven (7) days from the date of this Notice may obtain them by writing to the Trustee at the address shown above.

Claims by broker-dealers, either as customers or for the completion of open contractual commitments, must be filed with the Trustee at the above address within thirty (30) days after the date of this Notice. Broker-dealer claims will be deemed to be filed only when received by the Trustee. Claim forms may be obtained by writing to the Trustee at the address shown above.

All other creditors of the Debtor must file formal proofs of claim with the Trustee at the address shown above within six (6) months after the date of this Notice. All such claims will be deemed filed only when received by the Trustee.

No claim of any kind will be allowed unless filed within (6) months after the date of the Notice.

In part, the Customer Claim Form states as follows:

[i]t is strongly recommended that your claim be filed by certified mail, return receipt requested. Your return receipt will be the only document you will receive that shows your claim has been received by the Trustee.

The Instructions for Completing Customer Claim Form, which were part of that form, state in relevant part that:

[t]he law governing this proceeding absolutely bars the allowance of any claim, including a customer claim, not actually received by the Trustee on or before September 22, 1995. Neither the Trustee nor SIPC has authority to grant extensions of time for filing of claims, regardless of the reason. If your claims is received even one day late, it will be disallowed.

The time limitations governing the filing of customer claims in a SIPA liquidation are set forth in SIPA § 78fff-2. That section provides in relevant part as follows:

No claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of

notice . . . shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.

15 U.S.C. § 78fff–2(a)(3). In accordance therewith, the Trustee denied any claims he received after September 22, 1995 as being time barred. Several claimants objected to that determination. We adjourned the hearing on the motion respecting certain claimants pending the completion of settlement discussions between the parties. At the close of the hearing we upheld the Trustee's determinations concerning claimants who failed to appear at the hearing. As relevant herein, the remaining objections fall into three categories: (i) claimants who allege that their claims were not timely filed because their property was transferred to another broker-dealer; (ii) claimants who allege to have received inadequate notice of the liquidation proceeding; and (iii) claimants who allegedly filed a claim with the Trustee prior to September 22, 1995. We address each of these below.

### Discussion

### Claimants Who Allege That Their Claims Were Not Timely Filed Because Their Property Was Transferred to Another Broker–Dealer

#### Laird and Susan Kelly

■ Laird and Susan Kelly admit to receiving a Claim Package in February or March 1995. They filed a claim after the Bar Date on or after December 21, 1995. Mr. Kelly explains the relevant circumstances as follows. While there was a debit in his Adler Coleman trading account, Kelly made a substantial withdrawal from the account. At that time, there was enough cash in a money market account accessible by Adler Coleman to settle the debit in the trading account. Adler Coleman failed to settle the debit and transferred the account—which contained securities and the debit—to the U.S. Clearing House. U.S.

Clearing House asked Kelly to satisfy the debit, which he did by sending a check. However, by the time the check arrived, U.S. Clearing House had transferred the account back to the Trustee, as it was permitted to do. Kelly explains that he did not file a claim because he believed that the debit in the transferred account had been settled.

■ Section 78fff–2(a)(3) is an absolute bar to late filed claims. In re Government Securities Corp., 95 B.R. 829, 832 (S.D.Fla. 1988); Miller v. Austin (In re John Muir & Co.), 72 B.R. 893, 895–97 (S.D.N.Y.1987). Our discretion to extend the six month period is limited to requests made within that period by specified parties and for cause specified in the statute. SEC v. J. Shapiro Co., 414 F.Supp. 679, 680, 682–83 (D.Minn. 1975). The statute permits no equitable relief. Camp v. Morey (In re Government Securities Corp.), 107 B.R. 1012, 1022 (S.D.Fla.1989) ("[SIPA] time limits for filing claims are mandatory and may not be extended by the exercise of some equity power"); In re Weis Securities, Inc., No. 73 Civ. 2332, 1975 WL 379, *2 (S.D.N.Y. Mar. 27, 1975) (SIPA time limits are mandatory and may not be extended by the "exercise of some equity power").

The Notice specifically advised claimants like the Kellys to file claims even though their accounts were transferred to another broker-dealer. While it is unfortunate that the Kellys misapprehended their obligations under SIPA, they failed timely to file their claim or to obtain an extension of time to do so. They do not fall within the narrow exceptions stated in the statute. We accordingly disallow their claim as a late filed claim.

### Claimants Who Allege to Have Received Inadequate Notice of the Liquidation Proceeding

#### Keith and Susan Jensen John and Audrey Quackenbush

■ John and Audrey Quackenbush and Keith and Susan Jensen filed claims with the Trustee on or about January 2 and March 1, 1996, respectively, in both cases after the Bar Date. They argue that their claims are not time barred by § 78fff–2(a)(3) because they

did not receive notice of this SIPA liquidation proceeding in accordance with § 78fff–2(a)(1). That section provides as follows:

> Promptly after the appointment of the trustee, such trustee shall cause notice of the commencement of proceedings under this section to be published in one or more newspapers of general circulation in the form and manner determined by the court, and at the same time shall cause a copy of such notice to be mailed to each person who, from the books and records of the debtor, appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor.

15 U.S.C. § 78fff–2(a)(1). The Jensens deny that they received a Claim Package from the Trustee. The Trustee submitted the affidavit of Frank D. Moore sworn to on September 10, 1996 (the "Moore Affidavit") to contest that assertion. Mr. Moore is an attorney and the President of Frank D. Moore & Associates, Inc. ("Moore & Associates"). The Trustee employs Moore & Associates to assist him in liquidating debtor's estate and satisfying customer claims. Moore Affidavit ¶ 1. The Jensens contend that Moore merely states that he oversaw the mailing of Claim Packages (*see* Moore Affidavit ¶ 2) and does not verify that the Trustee actually mailed them a Claim Package. The Jensens also note that while Moore testifies that Scott Printing assembled and mailed the Claim Packages (*see* Moore Affidavit ¶ 3), the Trustee submitted no evidence from Scott Printing demonstrating that the Claim Packages were mailed to the customers listed in debtor's books and records as Moore alleges. Assuming, *arguendo*, that the Claim Packages were mailed as stated in the Moore Affidavit, the Jensens contend that the Notice does not comply with § 78fff–2(a)(1) because only one Notice was sent to them as joint account holders, while the statute mandates that a Notice be sent to each "person who ... appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor." 15 U.S.C. § 78fff–2(a)(1). Finally, the Jen-

sens argue that the Trustee's publication of the Notice is inadequate because they did not see the March 22, 1995 local or national editions of THE NEW YORK TIMES and THE WALL STREET JOURNAL and because those are not newspapers of general circulation in Glen Carbon, Illinois, where they reside.

The Quackenbushes reside in Wellington, Florida. They deny that they received a Claim Package. They do not deny that the Trustee mailed them a Claim Package, but speculate that their package failed to reach them due to recurring problems with the U.S. Postal Service's delivery of their mail. Like the Jensens, they argue that the Trustee failed to satisfy § 78fff–2(a)(1) because he mailed only one Claim Package to the joint account holders and that the publication notice is inadequate.

■ As we discuss below in connection with our review of the timeliness of the claim filed by Rene Michael and Roselva Marie Yost, there is a rebuttable presumption that the addressee of a properly addressed and mailed notice receives that notice. *See Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *In re Mid–Miami Diagnostics, L.L.P.*, 195 B.R. 20, 22 (Bankr.S.D.N.Y.1996); *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y.1993). In essence, SIPC and the Trustee argue that the Trustee benefits from that presumption because Moore's testimony shows that the Trustee mailed Claim Packages to all customers with open accounts with the debtor within the previous year. In that regard, the Moore Affidavit states:

> In my capacity as President of Moore & Associates, I oversaw the mailing of claim packages to former customers of the Debtor and the processing of customer claim forms and correspondence....

> As required by [SIPA] and the Court's Order of March 10, 1995, the Trustee mailed claims forms to each person who, according to the books and records of the Debtor, had an open account within the preceding twelve months, to the addresses of those persons as they appeared from the books and records of the Debtor.

On or around March 22, 1995, claims packages consisting of notice of the commencement of the proceeding and bar date, an explanatory letter, a claim form, and instructions ... were sent to each of the customers listed on the document ... at the addresses indicated on that document, which addresses were the addresses of the respective claimants as they appeared from the books and records of the Debtor at that time. Scott Printing is a highly experienced provider of such services in SIPA proceedings.

Moore Affidavit ¶¶ 2–4. Exhibit B to the Moore Affidavit indicates that debtor's books and records listed "Keith Jensen & Susan Jensen" as "JTWROS" (joint tenants with right of survivorship) at 356 W. Glen St., Glen Carbon, Illinois 62034, with respect to account number 37–005534, and "John Quackenbush & Audrey Quackenbush" as "JTWROS" at 108 Pacer Circle, Wellington, Florida 33414, with respect to account number 49–503716. Neither the Jensens nor the Quackenbushes contend that these addresses are incorrect or that either of them, although listed as joint tenants, reside at separate addresses.

■ The Trustee was not required to submit an affidavit from Scott Printing. As the person overseeing the mailing, Moore is competent to testify that the Notices were mailed. *See, e.g., Meckel v. Continental Resources Co.,* 758 F.2d 811 (2d Cir.1985) (discussed below). Thus, it is incumbent upon the Jensens and the Quackenbushes to prove that they did not receive the package, by "direct" and "substantial" evidence. *In re Government Securities Corp.,* 107 B.R. at 1020. They cannot, as they have done, merely deny that they received the Notice or assert that the mail is unreliable. *Id.* The uncontradicted evidence shows that the Trustee mailed Claim Packages to the Jensens and the Quackenbushes. Thus, we find no merit to that aspect of their objections.

The Trustee concedes that he mailed one Claim Package per account irrespective of the number of account holders for the particular account. The Trustee and SIPC construe the phrase "every person who appears to have been a customer", *see* SIPA § 78fff–2(a)(1), to refer to each "customer" rather than every person listed on each account. Thus, they argue that the Trustee need only mail one notice to joint-account holders. They cite to SIPA and the SIPC Rules, 17 C.F.R. §§ 300.100 to 300.503 (1996), to support their assertion. By contrast, the Jensens and Quackenbushes read the statute to require that notice be mailed to each person listed on an account.

Under SIPA § 78*lll*(2), the term "customer" means

> any person ... who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person.... The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities....

15 U.S.C. § 78*lll*(2). The Jensen and Quackenbush accounts are "qualified joint accounts" as defined in the SIPC Rules.[1] Those accounts are separate "customers" under § 78*lll*(2). *Securities Investor Protection Corp. v. Morgan, Kennedy & Co., Inc.,* 533 F.2d 1314 (2d Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *Ravis v. Labriola (In re Investors Security Corp.),* 6 B.R. 415 (Bankr.W.D.Pa.1980).

■ SIPC makes payments under SIPA to customers who have outstanding obligations with a failed broker or dealer in an amount up to $500,000. 15 U.S.C. § 78fff–3(a). Congress enacted SIPA to protect "customers". *See In re Omni Mutual, Inc.,* 193 B.R. 678, 680 (S.D.N.Y.1996); *Securities Investor Pro-*

1. Under Rule 105(b)(1), a joint account is a "qualifying joint account" if it is owned jointly, whether by the owners thereof as joint tenants with the right of survivorship or as tenants by the entirety, or as tenants in common, or by husband and wife as community property, but only if each co-owner has executed a joint account agreement or similar agreement with the member and possesses authority to act with respect to the entire account.
17 C.F.R. § 300.105 (1996).

**106**

*tection Corp. v. Oberweis Securities, Inc. (In re Oberweis Securities, Inc.),* 135 B.R. 842, 845 (Bankr.N.D.Ill.1991); *see also* H.R.Rep. 91–1613, at 1 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5254, 5255. Joint account holders constitute a single "customer" under SIPA. 17 C.F.R. § 300.105(b) ("subject to paragraph (c) of this rule, each qualifying joint account with a [broker] shall be deemed held by one separate customer of the [broker]"). The joint account holders share any payments on account of a valid customer claim in proportion to their ownership interests in the account. *See Securities Investor Protection Corp. v. Morgan, Kennedy & Co., Inc.,* 533 F.2d at 1320. The Trustee and SIPC's reading of SIPA is consistent with and furthers the purpose of the statute.

However, even if the Trustee did not strictly comply with SIPA § 78fff–2(a)(3) by not mailing a Claim Package to each joint account holder, it is harmless error because the evidence proves that the Trustee mailed one Claim Package for each account to the address listed in debtor's account records. An error is harmless if it is not " 'inconsistent with substantial justice' " or does not "affect the substantial rights of the parties." *Citibank v. Arens (In re Arens),* 139 B.R. 667, 669 (Bankr.N.D.Ohio 1991) (quoting *Walsh v. Bekins Van Lines Co.,* 217 F.2d 388, 391 (8th Cir.1954)); Fed.R.Bankr.P. 9005 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). If the Trustee erred in failing to send two identical notices each to the Jensens and Quackenbushes, the error was harmless because it did not affect the substantial rights of the parties. *See In re Tornheim,* 181 B.R. 161, 168 (Bankr.S.D.N.Y.1995) (the only difference that would result from serving two sets of papers on husband and wife is that "instead of opening just one envelope, the [one] who receives service will open two envelopes containing identical papers"), *appeal dismissed,* No. 95 Civ. 8474, 1996 WL 79333 (S.D.N.Y. Feb. 23, 1996); *see also In re Schack Glass Indus. Co., Inc.,* 20 B.R. 967, 972 (Bankr.S.D.N.Y.1982) (finding harmless error where service of process made to office of joint venturer without being directed to

attention of an officer, managing agent or general agent); *Jahan Co. v. Dakota Indus., Inc.,* 27 B.R. 575 (Bankr.D.N.J.) (service of process sufficient where mailing not directed to attention of officer of defendant company), *aff'd,* 725 F.2d 668 (3d Cir.1983). Due process is satisfied by mailing a single notice to joint account holders because that notice is "reasonably calculated" to give actual notice to both. *See, e.g., In re Tornheim,* 181 B.R. at 168 (service of single set of papers on husband and wife debtors was sufficient notice of dismissal motion); *In re Ted A. Petras Furs, Inc.,* 172 B.R. 170, 177 (Bankr. E.D.N.Y.1994) (service of a single summons and complaint on husband and wife defendants in adversary proceeding commenced by chapter 7 trustee seeking avoidance of preferential transfers satisfies due process), *appeal dismissed,* 100 F.3d 943 (2d Cir.1996); *see also In re Paolino,* 49 B.R. 834 (Bankr. E.D.Pa.1985) (service of involuntary petition on husband at his place of business was reasonably calculated to inform wife-debtor who had connection with husband's place of business); 20 AM.JUR.2d. *Cotenancy and Joint Ownership* § 92 (1965) ("While it appears that service of a notice upon one tenant in common ... is not usually regarded as binding on the others, unless they are engaged in a common enterprise, the rule is different where the relation is that of a joint tenancy. In such a case, it is said that notice to one of them is binding upon all") (citations omitted).

The Jensens and Quackenbushes argue that the Trustee's publication notice fails to satisfy § 78fff–2(a)(1) because the national editions of THE WALL STREET JOURNAL and THE NEW YORK TIMES are not newspapers of general circulation in the counties in which they reside. They also suggest that the Trustee erred by failing to publish the notice on more than one day. When litigation threatens to deprive individuals of their property, due process is satisfied by "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94

L.Ed. 865 (1950); *see also Mennonite Board of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983). Thus, the proper inquiry is whether the Trustee acted reasonably in selecting means likely to inform persons affected by the liquidation proceeding, not whether each claimant actually received notice. *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). In *Mullane*, the court held that publication notice alone is not reasonably calculated to inform parties who can be notified by more efficient means such as personal service or mailed notice. 339 U.S. at 314, 70 S.Ct. at 657. However, "publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning". *Id.* It serves as a supplement to a more efficient form of notice, such as mailing or personal service. *See Weigner v. City of New York*, 852 F.2d at 651 ("Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable"); *see also Schroeder v. City of New York*, 371 U.S. 208, 209, 83 S.Ct. 279, 280, 9 L.Ed.2d 255 (1962).

Courts consistently reject the argument that a publication of "general circulation" must be generally available in the particular locality where the objecting party resides. *See, e.g., Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir.1995) (publication of notice of bar date in THE NEW YORK TIMES and THE WALL STREET JOURNAL sufficient even though creditors lived in Cleveland), *cert. denied*, —— U.S. ——, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996); *Charter International Oil Co. v. Ziegler (In re Charter Co.)*, 113 B.R. 725, 727 (M.D.Fla.1990) (publication notice in six newspapers to unknown tort claimants satisfied due process); *In re Government Securities Corp.*, 107 B.R. at 1021 (one day publication in THE WALL STREET JOURNAL was constructive notice of SIPA liquidation to customer in Peru despite fact that only 30 copies of the JOURNAL were sent to entire country); *Wright v. Placid Oil Co.*, 107 B.R. 104 (N.D.Tex.1989) (publication of bar date order in THE WALL STREET JOURNAL was sufficient notice to unknown creditor injured

at debtor's location in Louisiana); *In re Best Products Co., Inc.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y.1992) (rejecting argument that due process requires publication of notice of bar date in newspapers of general circulation in particular state where creditors reside as opposed to newspapers of general circulation in the United States). For our purposes, the national editions of THE WALL STREET JOURNAL and THE NEW YORK TIMES are newspapers of "general circulation".

 Moreover, publication of the Notice on a single day in those newspapers is reasonable under the circumstances. *See In re Chicago Pacific Corp.*, 773 F.2d 909 (7th Cir.1985) (notice published once in THE WALL STREET JOURNAL sufficient constructive notice of hearing on reorganization plan); *In re Government Securities Corp.*, 107 B.R. at 1021. Whether notice is reasonable requires a "determination of the best means, tempered by considerations of the costs and the effect of such costs upon the estate and its creditors as a whole." *In re Government Securities Corp.*, 107 B.R. at 1021 (quoting *Vancouver Women's Health Collective Soc. v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir.1987)). Here publication notice in THE NEW YORK TIMES and THE WALL STREET JOURNAL supplemented the mailing of the Claim Packages to addresses where the Jensens and Quackenbushes actually reside. The fact that they may not have actually received notice by this means or otherwise is irrelevant. *See In re OTC Net, Inc.*, 34 B.R. 658, 660 n. 3 (Bankr.D.Colo.1983) ("SIPA requires only notice by publication and mail and does not require actual knowledge or receipt of notice"). Accordingly, we uphold the Trustee's determination as to the Jensen and Quackenbush claims.

### Claimants Who Allegedly Timely Filed a Claim with the Trustee Prior to September 22, 1995

#### Rene Michael and Roselva Marie Yost

Joint account holders Rene Michael Yost and Roselva Marie Yost, with the assistance of their broker, Steven J. Sogard of Greenway Capital Corp. ("Greenway"), allegedly executed a Customer Claim Form on August

14, 1995 ("August 1995 Claim"). Immediately thereafter, Sogard allegedly mailed it to the Trustee. After receiving no response from the Trustee, the Yosts wrote to the Trustee in June of 1996 requesting information about the status of their claim. On June 19, 1996, at Sogard's suggestion, the Yosts signed another customer claim. That claim allegedly is identical to the August 1995 Claim, except that it is typewritten. The Trustee received the June 1996 claim on or about June 24, 1996. Moore Affidavit ¶ 5. Affidavits of Steven J. Sogard sworn to on October 3 and 9, 1996 were submitted in support of the Yosts' objection to the Trustee's determination. In his October 9, 1996 supplemental affidavit (the "Supplemental Affidavit"), Sogard contends that he caused the August 1995 Claim to be mailed on August 16, 1995 to the Trustee at the address set forth in the Notice. He further states as follows:

> In the case of the Yost's Customer Claim, I followed Greenway's normal mailing procedure for outgoing mail, which is to oversee the actual mailing by members of our secretarial staff, who address, stamp and deposit outgoing mail in a mailbox each afternoon, and register the item on the "mail log" that Greenway keeps as a record of all outgoing mail. Although the two secretaries that worked for me in August 1995 no longer work here, my "mail log" for August 16, 1995, previously submitted to the Court as Exhibit A to my affidavit of October 3, 1996, lists the mailing of an "Adler Coleman Clearing Corp. Liquidation Claim form" for "Yost" on August 16, 1995.

> A mail log is a log that Greenway Capital maintains for each representative of all outgoing mail that lists the date, name of the client and the article that is mailed. Mail logs are required to be kept pursuant to NASD regulation, which requires that the Phoenix branch office of Greenway Capital, an "office of supervisory jurisdiction," maintain a record of all incoming and outgoing mail material that relates to customers and their accounts. Greenway keeps mail logs in the course of its regularly conducted business activity and it is the regular practice of Greenway's business activity to record all outgoing mail on mail logs.

Supplemental Affidavit ¶¶ 3–4.

The Moore Affidavit describes the process by which the Trustee received and reviewed claims as follows:

> As customer claim forms and written correspondence are received by the Trustee, they are time-and-date stamped and placed in the claimants' claim folders. This process is handled by my staff, and I personally oversee it. The customer claim folders contain a reliable record of the documents received by the Trustee from customers and the dates on which they are received. These records indicate that the earliest written communication from the claimants listed below to the Trustee was received by the Trustee on the date indicated below:

| Customers | Account Number | Claim Number | Date on which earliest written communication was received by the Trustee |
|---|---|---|---|
| | * * * | * * * | |
| Rene Michael and Roselva Marie Yost | 28–001791 | 20376 | June 24, 1996 |

Moore Affidavit ¶ 5.

The Yosts argue that the evidence adduced in Sogard's affidavit creates a rebuttable presumption that the Trustee received the August 1995 Claim and that the Trustee failed to offer competent evidence to rebut that presumption. Citing *In re Nimz Transportation, Inc.*, 505 F.2d 177 (7th Cir.1974),

the Trustee does not dispute that the so-called "mailbox rule" applies in this case. However, he denies that the Yosts can benefit from it. SIPC denies that the rule is applicable. It cites *In re Weis Securities, Inc.,* No. 73 Civ. 2332, 1975 WL 379 (S.D.N.Y. Mar. 27, 1975), *SEC v. S.J. Salmon & Co.,* No. 72 Civ. 560 (S.D.N.Y. Feb. 11, 1974) (unpublished decision), and *In re R.B. Rose Co., Inc.,* 43 F.2d 446 (S.D.N.Y.1930), for the proposition that the Yosts must prove that the Trustee actually received the August 1995 Claim. According to SIPC, that proof should be in the form of a certified mail return receipt, which is absent because the Yosts allegedly mailed their claim by first class mail, notwithstanding instructions in the Notice that the claim forms be filed by certified mail.

*In re Weis Securities, Inc.* and *SEC v. S.J. Salmon Co.* are SIPA liquidation cases. In both, the SIPA trustee objected to the timeliness of claims allegedly mailed prior to the bar date and not timely received by the trustee. Both courts upheld the trustee's determination finding that

> "[f]iling is effected only if the claim is actually received by the trustee ... Claimants who choose to use the mails as a means of filing their claims assume the risk that accompanies such filing."

*In re Weis Securities, Inc.,* 1975 WL 379, *2 (quoting *SEC v. S.J. Salmon Co.,* 72 Civ. 560 (Bankr.S.D.N.Y.1974); *In re R.B. Rose Co., Inc.,* 43 F.2d at 447); *SEC v. S.J. Salmon Co.,* 72 Civ. 560 at p. 6 (Bankr.S.D.N.Y.1974) (citations omitted). *In re R.B. Rose Co., Inc.,* 43 F.2d 446, is a Bankruptcy Act case in which the court denied a creditor's request for leave to file a claim against the bankrupt *nunc pro tunc* to the bar date. The claimant contended that it timely mailed a claim but that it was not filed because it had been lost in the mail. The court denied the motion finding that because the statute requires receipt of the claim prior to the bar date, evidence that the claim was timely mailed, without more, is not sufficient. *Id.* at 447.

*In re Nimz Transportation, Inc.,* 505 F.2d 177, is also a case decided under the Bankruptcy Act. There, the court reversed the district court's disallowance of late filed claims for unpaid wages and other benefits. The claimants asserted that they mailed their proofs of claim to the district court clerk so they would be received well before expiration of the applicable bar date. Counsel responsible for filing the claims described the normal mailing procedure used for outgoing mail, and testified that although his employees did not remember mailing the particular package, he recalled initiating the normal mailing procedures for those claims. *Id.* at 178. The evidence also disclosed that "the mailing envelope was correctly directed and bore the proper address, and that the original cover letter and proofs of claim were not found in a later search of counsel's law office." *Id.* at 179. The debtor conceded that the clerk's file did not contain the proofs of claim and there was no direct testimony from the clerk that the claims had not been received or of the procedures used in processing claims received through the mail. *Id.* The court first noted that "mailing alone does not constitute filing, but that filing requires delivery and receipt by the proper party." *Id.* at 179 (citing *United States v. Lombardo,* 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916)). It then recognized that "a timely and accurate mailing raises a rebuttable presumption that the mailed material was received and thereby filed." *Id.* Applying that rule, the court found that the debtor had not rebutted the presumption of receipt merely by stating that the clerk's files did not contain the proof of claims. *Id.* It accordingly held that the presumption of receipt must prevail and found that the proofs of claim were timely filed. The court distinguished *In re R.B. Rose Co., Inc.,* 43 F.2d 446, and *In re Beattie,* 102 F.Supp. 107 (W.D.Mich.1951)—a case relied on by the *S.J. Salmon* court—because in those cases, the evidence showed that the subject claims were never received. *Id.*

Whether a document which has admittedly been received was timely received is different from the question of whether receipt of an unlocated document should be presumed. *Lexington Ins. Co. v. National Freight Co., Inc.,* No. 89 Civ. 0914, 1989 WL 68303, *2 (S.D.N.Y. June 21, 1989) (citing *In the Matter of Kero–Sun, Inc.,* 63 B.R. 50, 54 n. 3

(Bankr.D.Conn.1986)). As noted in *Lexington Ins. Co.:*

> Unlike the question of timely receipt, a missing notice raises the possibility that, even though the document was received by defendant and thus "filed," it was lost or misplaced by the defendant such that a search of records would not discover it. A rule establishing a rebuttable presumption that a properly mailed letter is deemed received by the other side is designed precisely to meet such situations.

*Id.* We reject SIPC's position and will apply the "mailbox rule" in this case. It is particularly appropriate to do so because the Notice mandates that the claims be filed at a post office box and creditors could not file them other than by mail.

■ To benefit from the presumption created under the rule, the Yosts must show that they properly mailed the August 1995 Claim. *Gulf Electroquip, Inc. v. Rodriguez,* 132 B.R. 991, 993 (Bankr.E.D.La.1991); *Ruina v. Commercial Travelers Mut. Acc. Ass'n. of America,* 272 A.D. 1028, 73 N.Y.S.2d 641 (1947), *aff'd,* 297 N.Y. 824, 78 N.E.2d 614 (1948). In the Supplemental Affidavit, Sogard states that Greenway's normal procedures were followed in mailing that claim. While Sogard did not post and mail the Yosts' Customer Claim Form, the Yosts need not produce the employee who actually did. *See Meckel v. Continental Resources Co.,* 758 F.2d at 816 ("under New York law personal knowledge [of mailing procedures] is required only to establish regular office procedure, not the particular mailing. Here, the presence of such proof establishes prima facie evidence of the mailing and creates a rebuttable presumption as to receipt"); *accord Village of Kiryas Joel Development Corp. v. Insurance Co. of North America,* 996 F.2d 1390, 1394 (2d Cir.1993) (employee's statement of customary office procedure plus record indicating that employee mailed letter sufficient to create presumption); *Bossuk v. Steinberg,* 58 N.Y.2d 916, 919, 460 N.Y.S.2d 509, 510, 447 N.E.2d 56, 58 (1983) (rejecting argument that there was insufficient proof of mailing "because the employee who actually did so was not produced" and finding that "[t]he proof of the course of business in this regard sufficed"); *Aetna Ins. Co. of Hartford v. Millard,* 25 A.D.2d 341, 269 N.Y.S.2d 588 (1966) (applying presumption where insurance broker testified that she typed forms, that one was placed in a correctly addressed envelope, and placed on a shelf where it was usually picked up to mail); *see also* 1A WIGMORE ON EVIDENCE § 95 (Tillers rev. 1983) ("evidence of a routine business practice of depositing messages in a fixed way with a carrier, when taken together with evidence of the carrier's routine methods of delivering messages, may be such as to permit the sender to offer such evidence of its routine practice to show receipt by the addressee when the only individualized evidence regarding the handling of the message by the sender is evidence of its execution in the usual course of business").

■ Under New York law, "[t]he mere denial of receipt does not rebut that presumption. There must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Meckel v. Continental Resources Co.,* 758 F.2d at 816. Moore does not merely deny receipt of the August 1995 Claim. He explains the procedure used by the Trustee to record incoming correspondence and the absence of a record of the Yosts' claims. *See* Moore Affidavit ¶ 5. That rebuts the presumption of receipt. *See Vita v. Heller,* 97 A.D.2d 464, 464–65, 467 N.Y.S.2d 652, 653 (1983) (finding presumption of delivery of notice of appearance and demand for complaint rebutted by affidavit from attorney's secretary describing usual practice of making notations on office files when pleadings or notices of motion are received and noting in her diary corresponding response dates); *see also Engel v. Lichterman,* 95 A.D.2d 536, 467 N.Y.S.2d 642 (1983), *aff'd,* 62 N.Y.2d 943, 479 N.Y.S.2d 188, 468 N.E.2d 26 (1984). Thus, to prevail on its objection, the Yosts had to adduce evidence that the Trustee received the August 1995 Claim. *See Vita v. Heller,* 97 A.D.2d at 464–65, 467 N.Y.S.2d at 653. Because they failed to do so, we sustain the Trustee's determination concerning their claim.

### Conclusion

We grant the Trustee's motion to uphold his determinations denying the late filed claims discussed herein and overrule and expunge those claimants' objections to his determinations.

SETTLE ORDER.